CASE 99—EQUITY—DECEMBER 7, 1882.

# Bridgford, trustee, v. Barbour. &c.

# Bowles v. Bowles' ex'r.

# Bowles' trustee v. Same.

3r 529
86 466
80 529
98 375

80 529
109 27

80 529
e111 402

80 529
136 432

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. An assignee for the benefit of creditors generally is not a purchaser for value.  He stands in the position of his assignor, and can assert no equity that could not be asserted by the debtor himself.

2. Although the right to secure a creditor is unquestioned, yet to permit a debtor, during the pendency of an action, to transfer his property to an assignee for the benefit of creditors, and thereby to deprive others of an equity, is a rule not only unreasonable but one that cannot be sustained.

3. The prayer for a ·partition and settlement, and for all the relief the parties were entitled to, authorized a full adjustment of all the accounts between them with reference to the estate.

4. If, in making partition, one of the children had, during the pendency of the action, collected all the rent, he must account for it, and his assignee, speaking for him, has no greater equity than the debtor himself.

THOS. W. BULLITT AND BULLITT & HARRIS FOR APPELLANTS.

1. Appellant Bridgford, as assignee for the benefit of Bowles' creditors, is a purchaser for a valuable consideration without notice.

2. There is no *lis pendens* as to any lien upon James Bowles' interest in the undivided estate of his father.

3. Even if any lien existed for rents collected as between the parties, Bridgford, as assignee for the benefit of creditors, is not affected by it, nor is he concluded by any judgment declaring the existence of such equitable lien.  (Mason v. Peck, 7 J. J. Mar., 302; Wickliffe v. Breckinridge, 1 Bush, 428; 6 *Ib.*, 618; Stone v. Connelly, 1 Met., 656; Dudley v. Price, 10 B. Mon., 88; Hawes v. Orr, 10 Bush, 437; Story's Eq. Jur., section 1038; Ambler, 726; 10 Humph., 371; 6 B. Mon., 252; 3 *Ib.*, 218; 1 Atkins, 160; 9 Ves., 99; 3 Hill, 231; 1 P. Will., 382; *Ib.*, 458; 2 Ves., 607; *Ib.*, 680, 1 Paige, 620; 2 Atkins, 417; 4 Burr. Ch'y, 142; 7 B. Mon., 95; Zaring v. Cox, 78 Ky., 527; 6 Gill & Johns., 229.)

A. P. HUMPHREY, GEO. M. DAVIE, AND A. E. RICHARDS FOR APPELLEES.

1. A court of equity, on the hearing of a suit for partition, will so adjudge as to secure to all an equal share of the property, and will declare and adjudge a charge or lien upon the joint property as between the joint owners.

2. Where one of the joint owners, pending such an action, assigns his undivided interest to an assignee for the benefit of his creditors, the assignee takes it subject to all equitable liens. He is not a purchaser for value so as to exclude equities.

3. In this case there is a *lis pendens* against the assignee, inasmuch as he takes the assignment subject to the liens upon the estate of his assignor. (Story's Eq. Jur., secs. 466, 655; 2 Leading Cases in Eq., 473; Freeman on Co-tenancy, secs. 505, 572; 16 Cal., 472; 5 Mad. Ch'y Rep., 223; 4 Paige, 336; 60 Barb., 164; 79 Ills., 246; 3 Nevada, 531; 1 Barb., 508; 5 Dana, 55; Nelson v. Clay, 7 J. J. M., 140; Graham v. Graham, 6 Mon., 562; Clark v. Fox, 9 Dana, 195; Alexander v. Ellison, 79 Ky.; 2 Hill, 653.)

4. Among other things, appellant prays "that, on final settlement, perfect equality be established according to law." This prayer authorizes the judgment. (Humphrey v. Foster, 13 Gratt., 657; 2 Min., 420; 10 Bush, 439; 60 Mo., 350.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

A part of the present record, involving a settlement of the estate of Joshua B. Bowles, deceased, has been heretofore in this court, and the rights of his heirs and devisees finally disposed of as to the issues then made. The principal issue determined on the former hearing was as to the nature and character of advancements made to each of his heirs and devisees. What constituted an advancement, and when the advancement was to be charged, were questions that had necessarily to be determined before a final settlement and division of the estate could be made between the parties in interest. The case went back from this court, after all such questions had been passed on, for the purpose of a final settlement and distribution that all the parties were seeking to obtain.

The testator died, leaving a last will, but omitted to devise by any of its provisions some valuable real estate, and leaving property devised and undevised, it became necessary to equalize the heirs and devisees in the division and distribution of the undevised estate.    The action was originally instituted by Thomas J. Barbour as the sole executor of the will of the testator, in which he alleged that a sale of the real estate was necessary for the payment of debts, and asked for a reference to the matter that a settlement might be had, showing the condition of the estate, and the necessity for making a sale of a part of the realty.    He asked for a settlement of his accounts as executor, and for a *partition of the real estate remaining after the payment of debts, &c.*, and also attempted to set forth the advancements made to each heir and devisee, with a view of having this settlement and partition.    He further asked for *all such orders and decrees as may be just and equitable, and for all general relief.*    After the filing of this petition, to which James Bowles, one of the present appellants, was made a defendant, the latter, upon his motion, was united with Barbour as plaintiff in the original action, it appearing that, by the will of the testator, both Barbour and James Bowles (a son of the testator) had been designated as executors, and had qualified.    An amended petition was then filed by the two executors, asking the same relief as in the original action by Barbour—that their accounts be settled, and a discharge from all liability as executors; that their individual interests be protected, concluding with a prayer for *all proper equitable and general relief.*

It seems that, prior to the death of the testator, Barbour (named as one of the executors), as his agent, had collected rents from this realty, and that after his death continued to

532          KENTUCKY REPORTS. ·     [VOL. LXXX.

Bridgford, trustee,· v. Barbour,· &c.    Bowles v. Bowles' ex'r.

.collect the rents up to 1874.   After 1874, the rents of this undevised estate (the realty) were collected by the appellant ·James Bowles, and in the report of his settlement made with the commissioner in this action some time in the year 1875, he is charged with the rents, having reported them as. a part of the estate of his devisor; or, if not a part of his. estate, as assets, for which he should account in the distri- bution or partition of the estate between himself and the· other heirs.   The precise amount of rent collected and. accounted for by James Bowles does not appear, but it is. manifest that he was accounting for the rent up to that. time as if it constituted a part of the estate of the testator. When the report of settlement up to that date in 1875 was. confirmed, and the question of advancements passed on by the court below, the case was brought to this court by an· appeal, and the judgment left undisturbed by the decision. here, except as to the advancements.

After the appeal had been taken, and before the return. of the case to the lower court, James Bowles made an as- signment of the whole of his estate for the benefit of cred- itors, to ·the appellant Bridgford.   The case having been reversed, and the rights of the heirs and devisees settled as to advancements, the court below proceeded to settle the estate between all the parties in· interest as if no as- signment had been made by the appellant, J. W. Bowles. The latter proceeded to collect the rents accruing upon the· undevised ·real estate during the pending of the appeal in. this court, and long after the case had been remanded to. the court below for further settlement.   The commissioner .made his additional report of settlement .in June, 1877, by which it appeared· that J. W. Bowles was indebted to the estate of his father in a sum exceeding eleven thousand dol-

lars.   About one half of this sum consisted of rents that he had collected from the undevised realty, all of which was reported and embraced in the report of settlement made by the commissioner.   That report was approved by the court, and made the basis of the judgment from which this appeal is prosecuted.   J. W. Bowles, in his own right, and as executor, and the assignee Bridgford, as the privy of J. W. Bowles, are each complaining of that judgment.

The judgment determines that J. W. Bowles is indebted to the estate of Joshua Bowles in the sum of $11,310.40, and as the share of J. W. Bowles in the real estate divided exceeded in value the amount he was owing the estate, the court adjudged that the share or lot assigned him should be charged with the payment of his indebtedness, and directed a sale for that purpose.   The assignee Bridgford was not made a party to the action, nor did he assert any claim or interest in the subject-matter of controversy until after that final judgment, and has only complained by the prosecution of this appeal.

It is claimed by the appellants, J. W. Bowles and his assignee Bridgford, that the undevised real estate descended to the heirs of Joshua Bowles, deceased, and that in the collection of the rents, he was only acting as the agent of the other heirs, and liable to them in his individual capacity, and not as executor; that the assignee of J. W. Bowles was a purchaser for value, and held his interest in the undevised realty, by reason of the assignment for the benefit of all his creditors, and that no latent equity, existing between the heirs and devisees by reason of the collection of these rents, can affect Bridgford, the purchaser.

It is further maintained, in behalf of J. W. Bowles, and
also Bridgford, that no judgment could have been ren-
dered against Bowles for the amount of rent collected, as
no charge was made by the heirs or devisees for the rent,
nor any such claim asserted by the pleadings. That each
one of the heirs of Joshua Bowles had an undivided interest
in the real estate not devised by the will is unquestioned,
and the extent of that interest would be necessarily con-
trolled by the value of the advancements made to each one
of the heirs and devisees. The appellant, J. W. Bowles,
as the executor of his father's will, had no control over the
undevised real estate by reason of his qualification as exec-
utor, but held and was possessed of this realty as a copar-
cener in conjunction with his brothers and sisters.

A purchaser, therefore, for value of his interest in the
land undevised would doubtless obtain his title free from
any claim that coparceners might have against him for rent,
unless an action was pending between the coparceners, at
the time of the purchase, with reference to the realty and
the rents, that could be regarded as a *lis pendens*.

Such a question, however, does not arise in this case, and
although authorities entitled to much consideration have been
adduced by counsel sustaining the position that an assignee
for the benefit of creditors generally is a purchaser for value,
this court, since the argument had in this case, and after a
careful consideration of the authorities on each side of the
question, has adjudged that such an assignee is not a pur-
chaser for value; that he stands in the shoes of the debtor,
his assignor, and can assert no equity that the debtor him-
self could not assert. It therefore follows that if the other
heirs or devisees of Joshua Bowles have an equity as against
J. W. Bowles, entitling them to procedure in the distribu-

tion of the assets or proceeds of the assigned estate over his general creditors, that this equity was not destroyed or affected in any manner by the assignment made to Bridgford.   The rule is, that such an assignee (an assignee for creditors generally) takes only such rights as the debtor or assignor had at the time of the general assignment.   (Story's. Equity Jurisprudence, section 1078.)

It is claimed by counsel for the appellants that this court,. in the case of Gibson v. Moore, reported in 7 B. Monroe,. has adjudged that such an assignee is a purchaser for value,. while, on the other hand, it is maintained that the facts of that case show the conveyance or transfer to have been made to satisfy the claims of attaching creditors.   It is unnecessary to pursue the inquiry for the purpose of determining what was. before the court in that case.   This court, in the case of the. Exchange and Deposit Bank of Owingsville v. Geo. Whitny and others, reviewing the authorities, and followed by the. case of Drake & Co. v. Ellman and others, has declined to. follow the rule said to be established by the case of Gibson v. Moore, and recognized the distinction, as laid down by Judge Story, between the case of a general assignment for the benefit of creditors generally and a particular assignment to certain creditors for the security or satisfaction of their debts.   The right to secure a creditor is unquestioned, and to create a preference, when not actually or constructively fraudulent; but to permit a debtor, during the pendency of an action or prior thereto, by simply transferring to an assignee, without any other consideration than to hold the. estate, as the debtor did, for the benefit of creditors generally, to deprive others of either plain or latent equities, is a rule. not only unreasonable but wanting in equity and justice,. and if established, the sooner it is disregarded the better.

The only question remaining to be considered arises in considering the nature of the action instituted by the executors, Barbour and J. W. Bowles, for the settlement of Joshua Bowles' estate, and a partition of the undevised real estate between his heirs and devisees.

It is manifest that it was an action for the complete and full settlement of the estate of Joshua Bowles, and not only so, but an action for a distribution and *partition* of the undevised estate.   J. W. Bowles, who was an heir and devisee, and also an executor, was himself seeking this settlement, and asking for an account not only of his own acts as executor, but an account from the other children of what advancements had been made them, in order that the chancellor might make not only a settlement of his accounts as executor, but make also a complete distribution and partition of the entire estate.   J. W. Bowles was then in the possession of the real estate undevised.   He had already, and prior to the appeal to this court, accounted for a part of the rents in his settlement as executor.   He continued to collect rents after the case returned, and after he had made his assignment.

The chancellor had taken jurisdiction over the entire case for the purpose of making an equitable division and settlement.   After the case returned to the lower court, the rents were reported as a charge against J. W. Bowles, and that report confirmed.   The rent was an incident to the realty, and sprung from the identical land that the children were all seeking to have partitioned.   The appellant voluntarily reported, in the first place, all the rents collected by him, and although insolvent, his portion of the estate was amply sufficient to indemnify the other children against loss.   It was necessary to permit J. W. Bowles to rent the land, or

place it in the hands of a receiver, until the question of advancement was determined, in order to ascertain who of the children were entitled, and the extent of that interest. It was as necessary to adjust and settle the account for rent as it was to settle any other account between the parties. They were not only settling the estate of Joshua Bowles, but making a settlement between themselves, with a view of ascertaining what each child had received from the estate, either before or after the death of their ancestor. If, in making the partition, one of the children had, during the pending of the action, collected all the rents, he must account for it. The prayer for a partition and settlement, and for all the relief the parties were entitled to, embraced all their rights as heirs, devisees, and coparceners ; in other words, they were entitled to a complete and full settlement, and in order to have this, it was necessary to have a full adjustment of all the accounts between them with reference to this estate. Each one of these children had the right to the possession of this undevised real estate. It was their common property, and held for the benefit of all.

In Story's Equity Jurisprudence, section 466, it is said: "In all cases of such joint interests, where one party receives all the profits, he is bound to account to the other parties in interest for their respective shares, deducting the proper charges and expenses, whether he acts expressly by authority as bailiff, or only by implication as manager."

And further, section 655: "Cases of a different nature, involving equitable compensation, to which a court of law is utterly inadequate, may easily be put; such, for instance, as cases where one party has laid out large sums in improvements on the estate. For, although, under such circumstances, the money as laid out does not in strictness

constitute *a lien* on the estate, *yet a court of equity will not* *grant a partition* without first directing an account, and compelling the party applying for partition to make due compensation. So, when one tenant in common has been in. the exclusive use of the rents and profits, on a bill for partition and account the latter will also be decreed."

And again: "For, in all cases of partition, a court of equity does not act merely in a ministerial capacity and in obedience to those who have a right to partition, but it founds itself upon its general jurisdiction as a court of equity, and administers its relief *ex aequo et bono* according. to its own notions of general justice and equity between the parties. It will, therefore, by its decree, adjust all the: equitable rights of the parties interested in the estate."

In Freeman on Co-tenancy it is said: "When equity has jurisdiction for partition, no obstacle exists to its proceeding to do complete justice by compelling an account for all. rents received."

It was also held in Humphrey v. Foster, 13 Grattan, 633:: "On a bill claiming a share of a tract of land asking for a partition and general relief, the plaintiff's right to a partition being established, under the prayer for general relief there may be a decree for an account for rents and profits."

We are satisfied the chancellor, under the pleadings in this case, had jurisdiction to make all the parties fully account, and that neither Bowles or his assignee have any cause to complain of the judgment below. J. W. Bowles. has obtained the relief that he and the other devisees were seeking by the petition filed, viz: an equal and just distribution and division of the estate of their ancestor. It was. proper that he should account for the rents, and his assignee, speaking for him, has no greater equity than the debtor.

himself had.   .Whether the action would have been regarded as a *lis pendens*, so far as it applies to the rents, as against the claim of a purchaser for value of the interest of J. W. Bowles, is a question not necessary to be decided, but it is. evident that the prayer for a settlement and partition and for general relief is sufficiently comprehensive to authorize the chancellor to dispose of all the equities arising between. the coparceners in the partition.

The judgment below is therefore affirmed.