CASE 42—ACTION TO RECOVER DAMAGES FOR DECEIT—JUNE 19.

# Ray v. First Nat. Bank of Louisville.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.   AFFIRMED.

RECEIVER OF INSOLVENT INCORPORATION—ACTION BY—RIGHT TO SUE FOR FRAUD, IN WHICH THE CORPORATION HE REPRESENTS PARTICIPATED.

Held:   The receiver of an insolvent insurance company can not maintain an action against a bank to recover damages for defendant's false and fraudulent representations as to the company's deposits, whereby the insurance commissioner was induced to give the company a certificate of solvency, authorizing it to continue in business, as the company itself, being a party to the fraud, could not maintain the action.

W. S. PRYOR, ATTORNEY FOR APPELLANT.   (H. S. BARKER AND PRYOR, O'NEAL & PRYOR OF COUNSEL.)

The Columbian Fire Insurance Company was organized under a charter which required the company to have a paid up capital of $200,000.   It became insolvent in eighteen months, and its assets placed in the hands of appellant, James S. Ray, as receiver.

Ray v. First Nat. Bank of Louisville.

The receiver, after his appointment, was invested by an order of court with special power to institute this action against the appellee bank, and in this action he represents not only the debtor but the creditors also.

The petition contains several paragraphs in which it is alleged that the bank and the chief officers of the corporation combined and conspired to deceive the insurance commissioner, whose duty it is to examine into the affairs of such corporation and report the amount of capital stock paid and the amount of money on hand, &c, and by the joint fraudulent misrepresentations and exhibits of the bank and corporation said commissioner was deceived and induced to make a report favorable to the corporation by a written published statement as to its condition.

We contend that a receiver with power to sue may assail any illegal act done by the debtor with a view of defrauding his creditors which affects their common interests. This doctrine is not based upon the idea that the title has passed to the receiver by reason of the assignment, but by reason of the creditors' equity to have the assets of the debtor applied to the payment of his debts.

The elementary doctrine is, that the receiver is not the agent or representative of either party to the action, but is uniformly regarded as an officer of the court, exercising his functions in the interest of neither the plaintiff nor the defendant, but for the common benefit of all parties in interest.

The court sustained a demurrer to the petition, and it is now urged that the action can not be maintained by the receiver because of the fraud of the bank and insurance company, and that the recovery could not be assets in the hands of the receiver for the benefit of creditors; that he stands in the shoes of the insolvent corporation and can not sue because the corporation could not sue.

### AUTHORITIES CITED.

Civil Code, sec. 203; High on Receivers, p. 2, sec. 1, p. 475, sec. 459; *ultra vires*, Bank v. Graham, 100 U. S., 702; 10 Wallace, 245; Hindman v. First Nat. Bank, 98 Fed. Rep., 565; Ins. Law of Ky., sec. 627; High on Receivers, pp. 212-461-443; 98 Fed. Rep., 562; First Nat. Bank v. Marshall, 83 Fed. Rep., 723; Gas Light Co. v. Lansdon, 172 U. S.; Salt Lake City v. Hollister, 118 U. S., 256; Bank v. Graham, 100 U. S., 699; Brant v. Iron Co., 93 U. S., 326; Pomeroy's Equity, p. 803, sec. 802.

Liability for fraud. 109 Mo., 146; 19 Howard's Practice, N.

Ray v. First Nat. Bank of Louisville.

Y., 286; Nevada Bank v. Nat. Bank, 59 Fed. Rep., 338; Thompson on Corporations, secs. 4779, 6279, 6283.

HUMPHREY, BURNETT & HUMPHREY AND DODD & DODD, FOR APPELLEE.

(No briefs for appellee.)

OPINION OF THE COURT BY JUDGE GUFFY—AFFIRMING.

It appears from the petition in this action that the appellant, James S. Ray, was appointed receiver of the Columbian Fire Insurance Company by the order of the Jefferson circuit court, common pleas division. It is further alleged that the Columbian Fire Insurance Company was incorporated and organized for the purpose of conducting the business of fire insurance; that the company claimed to have organized, and by the terms of the charter was required to organize, with a paid-up capital stock of $200,000, and a surplus of $50,000, and by law required to have said capital stock paid up in full before it commenced business, and was required to have said cash paid in before it was authorized to conduct or carry on the business of fire insurance, but, as a matter of fact, at the time of its alleged organization and commencement of business there was a large shortage in its capital stock; that, prior to its organization and commencement of business, it was necessary for said company to be examined by the insurance commissioner, who was a public officer charged by law with the duty of examining the condition of insurance companies, and making known to the public the true condition of the affairs of such companies, and of protecting the public against fraudulent organization and management of such companies, and to examine into the condition of the stock of such companies, the amount of cash paid in on account of such capital stock, and the amount on hand and belong-

ing to such company at the time of such examination, and to refuse to permit such company to engage in or continue the business of insurance when, on examination, it is ascertained by said commissioner that its capital stock is impaired, or when it did not have on hand the full amount of capital stock required by law, or the surplus had not been paid in, or for any other reason it was made to appear that such company is not authorized by law to begin or continue such business of insurance. It is further alleged, in substance: That the said fire insurance company falsely and fraudulently claimed that it was fully organized, with all of its capital stock and surplus paid in, and that the amount of cash was actually in its possession January 1, 1893, and asserted that said company was then organized according to law, with the capital stock and $50,000 surplus, and that same was then on hand and deposited in the First National Bank of Louisville, which was publicly announced as the depository for all the funds of the said company, and demanded of said commissioner of insurance an examination of its accounts and of its organization, and demanded a certificate that it was fully paid up and organized according to law. That the said commissioner, who was then Henry F. Duncan, in the discharge of his duty, and at the request of the said company, made an examination of the affairs and capital stock of said company, and did authorize it to do business, and reported the necessary facts—that it had in actual cash $248,182.90 then on deposit in the defendant bank, of which $200,000 was cash in full of the capital stock of the company, and the remainder was net surplus of said company. That the First National Bank, defendant, knowing that said examination was to be made, and that it was necessary, in order for said company to do

business, that it should be made to appear to said commissioner that the said amount of money had been actually paid in on account of said capital stock and surplus, and was then on deposit in its said depository, falsely and fraudulently conspired with the said company to mislead and deceive said commissioner, in order that said commissioner might authorize said company to do business, and did make said commissioner, as the basis of its report, a false statement of the accounts of said insurance company in said bank, and, among other false statements then and there made for the purpose of giving to said insurance company false credit and permitting it to organize, the First National Bank, through its cashier, Thomas R. Sinton, made and delivered to the said commissioner the following statement to-wit (a copy of which is filed, which, in substance, is as heretofore set out in the petition). It is further alleged that said statements were false, and made for the purpose of giving said company a false credit and deceiving the commissioner, and to enable the company to get a license, and it did have that effect, and caused the license to be issued, a copy of which is filed. It is further alleged, in substance: That said representation of defendant, furnished to the commissioner for the purpose of enabling him to certify that said insurance company was organized according to law, was false, and made for the purpose of enabling the company to organize and do business, when the defendant well knew that, if the true facts were made known, the defendant could not and would not be authorized to do business, and that at the time when the said representations were so made by the said bank the said insurance company was bound to pay to said bank a large part of said money, and afterwards did in fact pay a large part thereof, and that the alleged

cash paid in consisted, in a large part, of notes which had been discounted by said company, and on which it was liable to the said bank, naming a number of them; also a demand certificate of deposit, in the sum of $25,000, issued by a New York bank to the company, which was in the nature of a loan to said company, on which it paid interest, and was under a written agreement between the bank and insurance company that said certificate was not to be good until said company had deposited in said Tradesmen's Bank a sufficient amount to pay off said certificate of deposit, which deposit was in fact only a loan, all of which was known to the defendant herein; also an item of $19,500 entered in said cash alleged by said bank to be on hand, which was money borrowed by the insurance company, and for which it had pledged collections and assets of said insurance company. That at the time of the giving of said certificate by the defendant herein, the company was liable to said bank and others for nearly one-half of said capital stock, all of which was well known to defendant bank, and a large part of which indebtedness was to the bank, and at the time the defendant then had in his possession all of the notes on which the insurance company was liable, and which the defendant knew had been used to make up the capital stock, and also had the certificate of deposit, and knew the same was not to be cashed at that time, and was held by it under the arrangement aforesaid, and fraudulently concealed and suppressed said facts, and did not disclose any of same to the commissioner, all of which were material, and which, if they had been stated or made known to the commissioner, would have resulted in his refusing to authorize said company to do business, and would not have put it in the power of said company to have created any

of the debts hereinafter shown, and that said certificate
of authority and license to do business was ·fraudulently
obtained, and by means thereof the indebtedness herein-
after referred to was created.  He states: That said com-
pany, after it was so organized, continued to do business
until February, 1894, ·when it made a general deed of as-
signment to S. H. Sullivan, who was afterwards removed
by orders of said court; and this plaintiff appointed', as
hereinbefore stated; and, upon examination of the affairs
and accounts of said company, it has been ascertained,
and it is true, that said company is indebted in a large
amount, to-wit, in at least the sum of $300,000, over and
above all its assets, as shown by the commissioner's re-
port now on file in said suit of S. H. Sullivan, assignee,
against the Columbian Fire Insurance Company and
others.  That said company was organized and incurred
said indebtedness by fraudulent representations as afore-
said to said commissioner; and by the false statement
of the defendant herein to said commissioner, and by other
false statements made by said bank, the said company
was authorized to continue said business, and all of said
indebtedness and loss to the creditors of said insurance
company was caused by the false representations of the
defendant, which combined and conspired with the said
insurance company to obtain said license and certificate of
authority for said insurance company, by which it was
enabled to carry on the business of insurance; and he says
that the said defendant is liable to this plaintiff, as re-
ceiver, who sues for the benefit of all the creditors of said
company, for the sum of $300,000.  The other paragraphs
of the petition are as follows:

Paragraph 2: "The plaintiff further states: That after
the organization of said insurance company as aforesaid,

and after it had first obtained license, the said insurance company again applied to the said Duncan, who was then commissioner of insurance for the State of Kentucky, for a certificate of authority or license to continue business for the year 1895; and this defendant combined and conspired with the said insurance company so as to give the said insurance company a false credit with said commissioner, and for the purpose of showing that the capital stock of the said insurance company was unimpaired and intact; and to that end, and by a secret arrangement and agreement between the said insurance company and the said defendants a note for $60,000 was placed in the possession and care of said bank, on which said insurance company was liable as indorser or guarantor, and the said bank loaned to the said insurance company, or claimed to have placed to the credit of the said insurance company, the said $60,000, and certified to the commissioner that the said $60,000 belonged to said insurance company and was on deposit with it, and again certified that the said bank had on deposit with it said amount of money, when in truth and in fact the said insurance company owed the defendant the said amount of $60,000; and said statement was fraudulently made for the purpose of deceiving the said commissioner, and inducing him to give to the said insurance company a certificate of authority to continue the business of insurance, and was made under and by arrangement and conspiracy between the said insurance company and the said bank, and the said statement did in fact deceive and mislead the said commissioner, and cause him to give authority to said insurance company to continue business for the year 1895; and after said statement was so made, and the said company again examined by said commissioner, and again authorized by said commissioner to continue

Ray v. First Nat. Bank of Louisville.

said business, and a few days before the assignment as aforesaid of said company to the assignee for the benefit of its creditors, said money was fraudulently returned by the said insurance company to said bank, and the said note delivered to said insurance company. That in fact the said note was a mere device, used for the purpose of a fictitious credit in said bank, and the bank certified to said commissioner and to the public, and especially to those dealing with the insurance company, that the said insurance company had then on deposit with the defendant that amount of money, when in truth and in fact it did not have such money on deposit, but, at best, was only a mere loan on part of the bank to said insurance company, and it was understood and agreed between said insurance company and the defendant that said money would be returned to it on demand; and the said insurance company was permitted by the fraud, deceit, and misrepresentations of said bank, to continue said business and create and incur large liabilities, and the said money was repaid to the defendant by said insurance company fraudulently and without any right or authority so to do, and the plaintiff has demanded said money of said bank, which it has refused to repay to the plaintiff, in whole or in part. He says that the said company had no right or authority to repay said money to said bank, and the bank had no right to receive the same; that the said bank did not disclose to said commissioner or to the public the secret arrangement between it and the insurance company, but expressly represented and held out and asserted that the said insurance company had said amount of money to its credit in said bank, and did not disclose that it had any claim on said insurance company to any part of said amount alleged to

be on deposit in said bank; and he said that said bank is estopped from claiming that the said transaction was a loan by it to the insurance company, or that said insurance company was in any manner bound on said note to it, and the said payment to it was fraudulently made, and in fraud of the rights of the creditors of said company, and it had no authority to receive the same. The plaintiff says that the said $60,000 was by said bank, under said secret arrangement, claimed to have been deposited by said company for the sole purpose of obtaining credit therefor with said commissioner, but that in fact said company was given credit in said bank for said amount under a secret and fraudulent arrangement between said bank and said company, and afterwards, under a secret arrangement between said bank and said company, the said amount was charged back to said insurance company. Just the exact arrangement between the bank and said insurance company is unknown to plaintiff, but he says that in fact the company did not pay back said money to said bank, but the bank fraudulently undertook to charge back said money to said company, and, under a secret arrangement between said bank and some of the officers of said company, the bank obtained the checks of the manager of said company, or of said company, all of which was fraudulently done. Now, the premises considered, the plaintiff states that the defendant is justly indebted to him, as such receiver, for the said sum of $60,000, no part of which has ever been paid.

Paragraph 3: "The plaintiff further states that by the laws of the State of Kentucky, under which the said Columbian Fire Insurance Company pretended to have organized, it was necessary for the said company, before it could begin or continue business, to obtain from the commis-

sioner of insurance for the State of Kentucky a certificate of authority or license, and before issuing such certificates or license, it was the duty of the said commissioner of insurance to thoroughly examine the said proposed company, and especially to examine to see that its capital stock was fully paid up, and that the surplus was on hand in actual cash; and until said capital stock and said surplus were paid up in cash, and actually in possession of the proposed company, the said commissioner was not authorized to give, but was prohibited from giving, to said company a certificate of authority or license to do business as an insurance company, all of which was well known to the defendant herein, as well as to said proposed company. He says that on or about the 31st day of December, 1892, the said proposed company, through its officers, demanded and requested of the said commissioner of insurance for the State of Kentucky, who was then one H. F. Duncan, that he make an examination of its capital stock and surplus and proposed plan of work, and give to them the necessary certificate of authority or license to do business in the State of Kentucky; and pursuant to such request and demand the said commissioner did make an examination of the affairs of the said company, and of its cash, capital stock, etc., and did give to said insurance company a certificate of authority or license by which to do business, which said certificate of authority, or a copy thereof, is set out in full in the first paragraph of this pe· tition, and is here referred to as part hereof. He says: That the said defendant entered into a secret device and arrangement with the said proposed insurance company by which to deceive and mislead the said commissioner of insurance and suppress the true facts, and the said defendant, in order to enable said insurance company to obtain

said license, made the affidavit set forth in the first para-
graph of this petition, and certified that the capital stock
was paid up in full and that there was a surplus of more
than $48,000, and that all of said cash was on deposit with
it, the defendant herein; and at said time the defendant
well knew that it did not have, in actual cash on hand, said
amount of money, and that said capital stock was not paid
up in full, and the said representations were falsely and
fraudulently made for the purpose of deceiving and mis-
leading said insurance commissioner, and of obtaining said
certificate, when if the said defendant had truly and cor-
rectly stated the real facts, said commissioner could not
and would not have issued said license to defendant to do
business. That at the time said certificate was made,
among other items then on hand, the defendant had in its
possession a certificate of deposit from the Tradesmen's
Bank of New York, which was left with the defendant, and
which the defendant well knew was not to be collected
until the said insurance company deposited with said
Tradesmen's Bank a sufficient amount of money to pay the
same, and it was given by said Tradesmen's Bank under a
secret arrangement and agreement, same was not to be
forwarded for collection until the said amount had been
deposited with said Tradesmen's Bank, and the said insur-
ance company did not have said amount on hand with the
defendant herein, but afterwards was compelled out of its
funds to pay the said amount of $25,000, and did so pay it
out of the funds of said insurance company, and the said
certificate of the defendant that the said money was cash
on deposit with it was false and fraudulent; and he says
that the defendant is now estopped to claim that said
amount of $25,000 in cash was not in its possession, or to
pay itself, out of any money belonging to said insurance

company, the said amount so certified to be on deposit with it.    He states that, subsequent to said certificate on the part of the said bank as to said money being on deposit with it, the said defendant charged back said money to the said insurance company through the said Tradesmen's Bank.  He says that, but for the said false statements made by the defendant to said commissioner of insurance, the said commissioner of insurance would not have licensed said company to do business as an insurance company, or permitted the said insurance company to create the large liabilities set forth in the first paragraph of this petition; that, the defendant herein having certified that said amount of $25,000 was actually on deposit in cash with it, it is now estopped to deny that same was on deposit with it, and the said defendant is now justly indebted to the plaintiff for the said sum of $25,000, which it has demanded of the defendant, but no part of which has ever been paid."

Paragraph 4:    "The plaintiff further states that, in order that the Columbian Fire Insurance Company might obtain license to do business as an insurance company in the State of Kentucky, the defendant combined and conspired with the said Columbian Fire Insurance Company to fraudulently deceive the insurance commissioner of the State of Kentucky as to the amount of assets belonging to said insurance company on hand, and, so combining and conspiring, the defendant entered a fraudulent credit on its books in favor of said insurance company for the sum of $60,000, for the purpose of deceiving said insurance commissioner into the belief that said insurance company had on deposit at the defendant's bank the said sum of $60,000, at the same time entering into a fraudulent conspiracy and agreement that the said insurance company was to have no right

or power to use any part of said $60,000, but that the same should simply stand upon the books as a credit for the purpose, as hereinbefore stated, of deceiving the insurance commissioner of the State of Kentucky, and thereby obtaining a license to do business as an insurance company in the State of Kentucky, under the insurance laws of said State. The plaintiff further states that after the examination of the insurance commissioner, and the granting of the license by him to the said company to do business, this defendant, on the 19th day of February, 1894, required and forced the said Columbian Fire Insurance Company, without any consideration therefor, to pay over to the defendant the sum of $1,131.65, pretending that said sum was lawful interest on said pretended loan of $60,000 made as herein set forth. Plaintiff states that the pretended loan was a mere fraud and sham; that said insurance company at no time had the use of said $60,000, or any part thereof, except for the purpose of deceiving the insurance commissioner, as herein set forth; that the payment of the said $1,131.65 was without consideration, and a fraud upon the rights of the stockholders and of the creditors of said insurance company; that the defendant, the First National Bank, thereby became and was and is justly indebted to the estate of the said insurance company and to this plaintiff in said sum of $1,131.65, with interest at the rate of 6 per cent. per annum from the 19th day of February, 1894, until paid, the payment of which said sum this plaintiff has often demanded of the defendant, the First National Bank, but which the defendant has always refused, and still refuses, so to pay, and the same remains now due and wholly unpaid. Wherefore plaintiff prays for judgment against the defendant for said sum of $1,131.65, with

interest at the rate of 6 per cent. per annum from the 19th day of February, 1894, until paid."

Paragraph 5: "For further cause of action herein, plaintiff states that prior to the assignment of the Columbian Fire Insurance Company the defendant, the First National Bank, entered into a contract with the said fire insurance company whereby it was agreed that the said insurance company should deposit its cash with said defendant, and that in consideration of said deposit the defendant, the said First National Bank, agreed to pay the said insurance company for the use of the money so deposited interest at the rate of 3 per cent. per annum upon the average daily cash balance of said insurance company with said defendant bank; that after said assignment no change or modification in said contract as to the payment of interest was made, and the said bank remained the depository of the assignee of the said insurance company, the said assignee simply carrying on and continuing the contract for the payment of interest on the average daily cash balances as herein set forth; that from the 27th day of February, 1894, to June 21, 1896, the average daily cash balances of cash belonging to the estate of said insurance company on deposit with the defendant, the First National Bank, under said contract, was the sum of $149,032.54; that interest on said sum at the rate of 3 per cent. per annum for said time amounts to the full sum of $6,245.59; that by reason of the premises the defendant, the First National Bank, became, was, and is justly indebted to the estate of the said insurance company in the full sum of $6,245.59, the payment of which this plaintiff has often demanded of the defendant, but the said defendant has hitherto failed and still fails so to pay, and the whole now remains due and unpaid. Wherefore this plaintiff prays judgment

against the defendant for said sum of $6,245.59, with interest at the rate of 6 per cent. per annum from June 21, 1896, until paid. The plaintiff further states that he brings this suit by and under an order of the Jefferson circuit court, common pleas division, duly entered in the said action, wherein this plaintiff was appointed receiver. Wherefore the plaintiff prays for judgment against the defendant for the said sum of $300,000 indebtedness of said insurance company, as shown by the commissioner's report, which will be on file in said suit of Sullivan, assignee, against said insurance company, and in at least the sum of $300,000; or, if it shall be adjudged that plaintiff is not entitled to recover under the first paragraph of its petition, then the plaintiff prays for judgment for the sum of $60,000, with 6 per cent. interest per annum thereon from this date until paid, and the further sum of $25,000, with 6 per cent. per annum interest thereon from this date until paid, and the further sum of $1,131.65, with interest at the rate of 6 per cent. per annum from the 19th day of February, 1894, until paid, and for the further sum of $6,245.59, with interest at the rate of 6 per cent. per annum from June 21, 1896, until paid; and prays for his costs herein expended and for all proper relief."

Defendant moved the court to require the plaintiff to elect whether he would prosecute the alleged cause of action asserted in the first paragraph of the petition, to the exclusion of the alleged causes of action asserted in the second, third, fourth and fifth paragraphs, or whether he would prosecute the latter to the exclusion of the former. The court refused to compel plaintiff to elect between the first and fifth paragraphs of the petition, but required him to elect between the first, second, third and

fourth paragraphs.   The plaintiff, under protest, elected
to stand by and prosecute the second paragraph of his
petition, being the paragraph referring to his $60,000
claim; but, in so doing, the plaintiff objects and excepts to
the ruling of the court in requiring any election to be
made in respect to the paragraphs.   Plaintiff also filed a
copy of the order of the court authorizing him to prose-
cute this action, which, after stating the court and style
of action, reads as follows:

"This day came James S. Ray, receiver herein, and, on
his motion, permission is given him to bring and prosecute
an action against the First National Bank of this city
to recover such sums of money as, in his discretion, he
may think said bank is chargeable with.   This order is not
a determination of the court that said bank is liable, or
as to whether the right of action is in favor of the cred-
itors, stockholders, or said receiver; all such questions
being reserved for determination in the particular suits
themselves."

Defendant thereupon demurred to the second paragraph
of the petition because it does not state facts sufficient
to constitute a cause of action against it, and on another
day demurred on the further ground that the said para-
graph of plaintiff's petition is insufficient to constitute
a cause of action against it, because the act of Congress
of June 3, 1864, under which it derived its charter, shows
that the said matters complained of herein are in excess
of its powers and *ultra vires*, which demurrer was on a
subsequent day overruled.   Afterwards appellant filed the
following amended petition:

"By leave of court, the plaintiff amends the second para-
graph of the petition, and makes the same more certain
and definite, and for amendment states that heretofore,.

to-wit, on the —— day of ——, he was, by an order duly and regularly entered by the Jefferson circuit court, common pleas division, appointed receiver of the Columbian Fire Insurance Company, a domestic corporation, regularly created such under the laws of the State of Kentucky, and carrying on the business of fire insurance, which at the time of this plaintiff's appointment as aforesaid was insolvent. He says that he duly qualified as such receiver, and gave bond as such, and has ever since been, and is now, the receiver of said company. He says that, by an order of the said court, all the claims, rights, demands, accounts, property and assets, of every kind and description, of said company, were transferred to him as such receiver, and by said order it was made his duty to collect and receive all said assets, property, claims, accounts and demands, and thereunto was given full and complete power, and the same, when collected and received by him, were to be by him distributed under and according to the orders of said court from time to time made. He says that, pursuant to the orders of said court, he has taken possession of a considerable part of said assets, and has made, from time to time, partial distribution thereof under the orders of said court. He says that, not being able to collect and receive all of the assets and property of said insurance company without litigation, and the defendant, the First National Bank, having in its possession certain property and assets belonging to the plaintiff as such receiver, and refusing to deliver the same to this receiver on demand, and especially having in its possession the assets and property particularly mentioned in the several paragraphs of the petition, this plaintiff applied to the court aforesaid for a leave to bring and prosecute this suit against the defendants on the claims and demands

set out in the petition, which said request was objected
to by the defendant; and the court, being advised there-
on, granted said request and permission, and this suit
is filed and prosecuted by and with leave of said court,
and under its direction. A duly attested copy of said
order of leave is now on file in this suit, and is here re-
ferred to and made part of this paragraph. He states that
by and under the laws of the State of Kentucky, under
which the said insurance company was organized and
operated, it was made a part of the duty of the commis-
sioner of insurance of the State of Kentucky to examine
into the affairs of said company at such time as he might
deem it prudent so to do; and if, upon such examination,
such insurance commissioner was of the opinion that said
company was insolvent or had exceeded its powers, or
had failed to comply with any provision of law, or that
its condition was such as to render its further proceedings
hazardous to the public or its policy holders, he should
revoke or suspend all licenses issued to it or its agents,
and cause notice thereof to be published in some paper
having general circulation in the State, and to immediately
notify the general agents of the company of the suspension
by the commissioner, and, for a failure so to do by the
said commissioner or agent, the one so failing should be
fined not less than fifty nor more than one hundred dol-
lars for each offense. It was also made the duty of said
commissioner to apply to the judge of the Jefferson cir-
cuit court where said company was located to issue an
injunction restraining said company, in whole or in part,
from further proceeding with its business. He says that
the Columbian Fire Insurance Company was organized
on or about January 1, 1892, with a capital stock of
$200,000, which it claimed was fully paid in cash, and an

examination of the affairs of said company was made as
required by law by the said H. F. Duncan, who was the
commissioner of insurance for the State of Kentucky, and
the said company was granted license to begin business
under the circumstances shown in the third paragraph
of the petition. He states that on, before and subsequent
to the 1st day of November, 1893, that the capital stock
of said insurance company was greatly impaired, and
said company was insolvent, and had exceeded and was
exceeding its powers, and had failed and was fail-
ing to comply with many of the provisions of law under
which it was organized, and its condition was such as to
render its further proceeding hazardous to the public and
to the policy holders, and the showing and solvency of said
company were called into question, and the said H. F.
Duncan, then commissioner for the State of Kentucky,
deemed it prudent to make an examination of said com-
pany's affairs for the purpose of ascertaining its condi-
tion and whether it was solvent or insolvent, and whether
its capital was impaired, whether it had failed to comply
with any provision of law or had exceeded its powers, and
whether its continuation in business was hazardous to the
public or said insurance company's policy holders, and
whether he should revoke or suspend all licenses issued to
said defendant and its agents, and for these purposes did
commence said examination, and did notify the said insur-
ance company of his purpose to make said examination,
of all which facts the said defendant herein had
notice. He says that said insurance commissioner did
make said examination, and, under the statements and rep-
resentations and record entries hereinafter shown, did
continue the license of said insurance company and its
said agents, and did permit the said insurance company

to continue its said business and notify the public and said
insurance company's policy holders, and all other persons
interested in and dealing with said company, that it was
solvent, that its capital stock was unimpaired and was ful-
ly paid up, and that it was in good financial condition, and
able to meet its obligations.    He says that at said time,
the said insurance company, by and with the knowledge
and consent of the defendant herein, represented to the
said insurance commissioner that the defendant was its de-
pository for a large part of the capital of the said insur-
rance company, and especially of the cash capital of said
insurance company.    He says that after the said insurance
company and defendant herein had notice of the pur-
pose and intention of the said commissioner to examine
the affairs of said insurance company for the purposes
aforesaid, the said insurance company and the defendant
herein secretly and fraudulently, and for the purpose of
misleading and deceiving the said commissioner of insur-
ance, and of obtaining from him authority for said insur-
ance company to continue business, and to obtain from
said commissioner, for said insurance company, a certificate
of solvency, and that it had in all respects complied with
the law, agreed to, and in fact did, represent to the said
insurance commissioner that the said insurance company
had on deposit, as a part of the cash capital of said
insurance company, the sum of $60,000 and interest, and
entered the said $60,000 capital on the pass book of said
insurance company on the 15th day of November, 1893, and
on said day placed said money to the credit of said insur-
ance company, and both the said insurance company and
the said defendant represented and certified to said insur-
ance commissioner and said bank that the said insurance
company, then being examined for the purposes aforesaid,
had on said date on deposit in said bank, and had deposited

in said bank on said day, the sum of $60,000, and said representations were made by both of said parties for the purpose of deceiving and causing said commissioner to believe that the said insurance company had on deposit in the defendant bank the sum of $60,000 of its capital, and that its capital was unimpaired. He says that the said commissioner relied in good faith on said representations, and believed them to be true, and was thereby fraudulently induced to issue a false certificate to said insurance company, certifying to its solvency, and authorizing it to continue its business as a solvent concern, having an unimpaired capital. But for said false and fraudulent representations, the said insurance commissioner would not have permitted the said insurance company to continue business after said time, and would have revoked and canceled said license.

"He says that as a part of the plan and arrangement adopted and agreed on between the said insurance company and defendant to mislead and deceive the said commissioner for the purpose aforesaid, it was agreed between them (and said agreement was carried out) that the said insurance company would temporarily leave with said bank a note for $60,000 executed by James R. Skinner & Co. on the 23d day of September, 1893, and that the said insurance company should indorse and remain liable to defendant on said note, and that the said bank should at any time have the right to charge the amount of said note back to the insurance company, and on the 26th day of February, 1894, the defendant, without any right or authority to so do, did attempt to charge back said amount to said insurance company, and, pursuant to said original and secret arrangement, had said insurance company, or some of its officers, to issue to it a check for said amount, and on February 19, 1894, a check for $1,131.65, claimed to be interest on said transaction, was issued by said in-

surance company, or some of its officers, when, in truth and in fact, said note was never discounted in said bank, and when no loan of said money, or any part thereof, was in fact made: and the defendant had no right or authority to charge back said amount to said insurance company, and is estopped to claim that said transaction was a loan, or to assert any claim against said insurance company on account of said note, and is estopped from claiming that said $60,000 was not a part of the capital of said insurance company, and is estopped from claiming that said insurance company remained bound to it on account of said plaintiff's action, and was bound to repay said money to it and is estopped to deny that said sum of $60,000 was on deposit in said defendant bank.    He says that the said $60,000 are a part of the assets of said insurance company, and, as receiver aforesaid, he is entitled to same, and the said defendant is justly indebted to him in said amount, together with six per cent. per annum interest thereon from the date of filing the original petition herein.    The public and those dealing with said insurance  company, and who are now interested in the assets of said company, were deceived and misled by the aforesaid secret arrangement and agreement of the defendant and said company, and the said insurance commissioner was deceived and misled thereby, and the said insurance company and the defendant herein, well knowing that said commissioner was investigating the affairs of said company for the purpose aforesaid fraudulently concealed from said commissioner the fact that the defendant held the said company bound in any amount on account of said deposit, and fraudulently concealed the fact that the said note was left with said defendant, or that said insurance company remained or attempted to remain liable to defendant on

said note or for said deposit, and fraudulently concealed from said commissioner, for the purpose aforesaid, the said secret arrangement by which the defendant reserved the right to charge back said deposit, and treat the same as a mere loan. He says that the said Skinner's note was worthless, and no attempt was made by defendant to collect the same, and the whole arrangement by defendant and said company was a fraudulent scheme and device to deceive and mislead the said commissioner and public generally as to the solvency of said company, and to enable it, when insolvent, and known to be insolvent by defendant and said company to continue business, and the same did in fact deceive and mislead the public and those dealing with said company, and cause to the present creditors and policy holders a loss of more than $60,000. Wherefore the plaintiff prays as in the original petition he has prayed, and for judgment against the defendant for the sum of $60,000, with 6 per cent. per annum interest thereon from the filing of the petition herein until paid, and for his costs herein, and for all proper relief, and for the said sum of $1,131.65 wrongfully charged to said company as interest aforesaid."

By consent of parties, the demurrer filed and sustained to the second paragraph of the original petition shall be considered and taken as a demurrer to the amended petition this day filed.

On the 8th day of October, 1898, the circuit court adjudged that the plaintiff could not maintain this suit, for the reason, in substance, that the said fire insurance company, of which he is receiver, could not maintain the suit were it a going concern, and that it has not, and never had, any cause of action, admitting every allegation in the petition to be true, against the defendant. The money

which plaintiff seeks to recover in this suit in his capacity as receiver, if recovered and in his hands as receiver, could not, in law or equity, or upon any known theory or principle of law, be considered, nor would they be, in fact or in law, assets of said defendant defunct corporation. Neither as assignee nor receiver of said defunct corporation could plaintiff maintain this suit. The cause or causes of action, if any, to recover for the alleged fraud and deceit and conspiracy averred in the original and amended pleadings, are in those injured thereby, and not in one of the co tort feasors, or its assignee or receiver. "The demurrer to the second paragraph, original and amended, sustained; and the court sets aside its former ruling, overruling the defendant's demurrer to the first paragraph of the petition, and sustains said demurrer; and, as the plaintiff can not amend his petition to cure this fatal defect in his petition, the same is ordered to be dismissed." From this judgment rendered dismissing his petition the appellant prosecutes this appeal.

Counsel devoted considerable attention to the question as to whether or not the petition stated a cause of action. We are inclined, however, to the opinion that the petition states a cause of action, provided the appellant was entitled to prosecute the same. It is insisted for appellant that he is but an arm or officer of the court, and that, under the direction of the court, he is authorized to prosecute this suit for the benefit of all the creditors of the insurance company. The appellee very earnestly contends that the appellant is not entitled to prosecute the suit, even if a cause of action existed in favor of a creditor or stockholder of said insurance company; the contention of appellee being that the insurance company could not re-

cover upon the cause of action stated in the petition, and that the receiver is not entitled to prosecute any action that the assignor, the insurance company, could not prosecute. It is further contended for appellee that nothing passed by the assignment, except such rights as the assignor then possessed, and that, for the reason that the assignor could not maintain such a suit as this, the appellant is also precluded from maintaining the action. We have not been referred to any cases decided by this court exactly like the one at bar. Bank v. Stone, 80 Ky., 121-123 (3 R., 594), is cited for appellee. The court, in discussing that case, does hold that assignees are deemed to possess the same equities only as the debtor himself. It is further stated on page 123 as follows: "We are of opinion that the assignee, Jones, while he represents the creditors, can acquire for them no greater rights than they themselves could have enforced before the assignment, and that he holds the estate of the bankrupt, Whaley, just as the latter held it—subject to the lien of Brown, who may be said not only to possess an equitable, but a legal, lien for his debt." It will be seen that the assignee here spoken of was an assignee in bankruptcy, and the question under consideration was, in effect, a question of priority of liens. In Bridgeford v. Barbour, 80 Ky., 534 (4 R., 470), the court, in discussing that case, said, in substance, that, although authorities entitled to much consideration have been adduced by counsel sustaining the position that an assignee for the benefit of creditors generally is a purchaser for value, this court, since the argument had in this case, and after a careful consideration of the authorities on each side of the question, has adjudged that such an assignee is not a purchaser for value; that he stands in the shoes of the debtor, his assignor, and can assert

no equity that the debtor himself could not assert. The case of Maiders v. Culver's Assignee, 62 Ky., 165, is cited by appellee. It will be seen that the question under consideration in the case, *supra*, was whether or not a creditor could set aside a fraudulent transfer of property made by an assignor before he made a voluntary assignment. The court quoted with seeming approval the case of Brownell v. Curtis, 10 Paige, 219, as follows: "It . was decided that, where an insolvent debtor makes a fraudulent transfer of his property, he can not, by an assignment wholly voluntary, take away the right of his creditors generally to set aside such fraudulent transfer, and transfer that right to his own assignee for the benefit of preferred creditors, or all of his creditors equally." The court further said: "According to this decision, the right of appellant to set aside the fraudulent transfer of the money and slaves for the benefit of his daughter was not taken away by the deed of Culver to Dent. This doctrine is recognized, and the case, supra, referred to and approved, in Browning v. Hart., 6 Barb., 91." The court further quoted with seeming approval from the opinion in Leach v. Kelsey, 7 Barb., 470, as follows: "The court said the only grounds relied on by the appellant's counsel are: First, that the plaintiff can not maintain this action, inasmuch as it appears that after the sale, and before the commencement of this suit, Kelsey had made a general assignment in favor of all his creditors. It is supposed that this claim passed by the assignment, and can only be asserted by the assignee. This is a mistake. The general assignee takes no claim which the assignor could not enforce. His title is derivative, merely, and the assignor would be estopped from asserting his own fraud in a suit against his fraudulent vendee."

The court further said: "The same principle is asserted in Burrill, Assignm., p. 332, and must be regarded as authoritatively settled." As before stated, we have been referred to no case in which the right of an assignee or receiver to prosecute a suit of this kind had been decided. The majority of the court, however, are of opinion that inasmuch as the insurance company could not have recovered any part of the money in question from the bank upon the grounds relied on in the petition herein, and being of the opinion that the act of March, 1894 (now section 84, Kentucky Statutes), does not affect this action, it necessarily follows that the receiver, the appellant, can not prosecute this action. The judgment is therefore affirmed.

Whole court sitting.

Judge White dissenting.