## Cheatham v. Tennell's Assignee.

(Decided May 30, 1916.)

### Appeal from Nelson Circuit Court.

1. Mortgages—Chattel Mortgage on Property Not in Existence.—A mortgage of a crop to be raised on a farm during a certain term passed no title if the crop was not sown when the mortgage was executed. The thing mortgaged must have an actual existence at the time of the execution of the mortgage to the end that the mortgage may create a lien upon it.

2. Mortgages—Chattel Mortgage—Exceptions to Rule That Property Must be in Existence.—To the general rule that the thing mortgaged must have an actual existence at the time of the execution of the mortgage, there is an exception which exempts from its operation the increase of female animals covered by a mortgage and property acquired by a corporation in the exercise of powers conferred by its charter.

3. Assignments for Benefit of Creditors—Position of Assignee.—An assignee, for the benefit of creditors, generally speaking, can assert no rights that his assignor could not have asserted, and any equity which might have been enforced against the assignor is equally as available against the assignee.

4. Mortgages—Chattel Mortgage—Equitable Lien of Mortgagee on Property Not in Existence When Mortgage Was Executed.—A chattel mortgage on property to be acquired in the future is not void as between the parties, and whenever the mortgagor acquires the subject-matter of the mortgage it becomes subject to the lien of the mortgagee to the same extent as if it had been in existence at the time the mortgage was executed.

5. Mortgages—Chattel Mortgage—Equitable Lien of Mortgagee as Against Assignee of Creditors.—Where property to be acquired

in the future is mortgaged and the mortgagor, after the property has come into existence, makes an assignment for the benefit of his creditors, an equitable lien in behalf of the mortgagee attaches to the property superior to the rights of the assignee.

REDFORD C. CHERRY for appellant.

VICTOR S. KELLEY and JOHN S. KELLEY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In January, 1914, the appellant, George Cheatham, rented land to John Tennell, to be cultivated in tobacco. Under the contract of leasing one-half of the tobacco grown was to be Tennell's and the other half was to be Cheatham's. In February, 1914, Tennell sowed on the leased land a tobacco bed for the purpose of raising plants with which to set out the fifteen acres in tobacco that was to be grown under the rent contract.

On March 23, 1914, Tennell executed to Cheatham, his landlord, a note for six hundred dollars, and also a mortgage on his interest in the crop of tobacco to be grown and cultivated on the farm of Cheatham during the year 1914. $413.00 of the $600.00 note was made up of claims of Cheatham against Tennell in existence at the time of the execution of the note and mortgage, and the balance of the $600.00 was to be furnished by Cheatham to Tennell from time to time as it might be needed by him in cultivating the crop. It appears, however, that during the tenancy, and after the tobacco crop had been planted, Cheatham only furnished to Tennell provisions of the value of $95.00 to enable him to subsist while raising the crop, and this amount, together with the $413.00 previously advanced Tennell, was all that was actually advanced by Cheatham to him; and so to the extent of $92.00 the $600.00 note was without consideration, and as to this sum there is no controversy between the parties, nor is there any dispute as to the right of Cheatham to have a lien for the $95.00 furnished to Tennell after the tobacco had been planted.

In December, 1914, Tennell made a general deed of assignment for the benefit of his creditors to Victor L. Kelley, and under the deed of assignment the assignee, Kelley, took possession of Tennell's one-half interest in the crop of tobacco raised on the leased premises and which had not been sold at this time. Under an agreement between the parties the tobacco taken possession

of by the assignee was to be sold and the proceeds held until it was determined whether the tobacco taken possession of by the assignee should go to Cheatham under his mortgage to satisfy the note, less $92.00, or to the assignee under the deed of assignment. In this controversy Cheatham insists that by virtue of his mortgage he had a lien on the tobacco superior to the claim of the assignee, Kelley. And it is further urged in behalf of Cheatham that although he might not be entitled to a lien strictly by virtue of his mortgage, in any event he had an equitable lien which was superior to the right of the assignee. On the other hand, the contention of the assignee is that the mortgage executed by Tennell to Cheatham did not give him any lien on the tobacco except to the extent of $95.00, because at the time of the execution of the mortgage the tobacco was not in existence as it had not been planted.

Upon these facts the lower court ruled that Cheatham had a lien superior to that of the assignee to the extent of the $95.00 which had been furnished to Tennell under the lease contract and as a part of the $600.00 note secured by the mortgage for the purpose of enabling Tennell to subsist while raising the crop, but that as to the $413.00 due on the note Cheatham had no lien on the tobacco because it was not in existence when this part of the indebtedness embraced in the note was created.

Following this judgment Cheatham filed the record in the clerk's office of this court and prayed that an appeal be granted and the judgment of the lower court reversed.

Taking up first the issue as to whether under and by virtue of the mortgage alone, aside from any equitable rights growing out of the transaction, Cheatham had a lien on the tobacco to the extent of $413.00 superior to the claim of the assignee, we find this question has been settled adversely to the contention of Cheatham by more than one opinion of this court.

In Ross v. Wilson, Peter & Co., 7 Bush, 29, the court said: "The general rule is that at law a grant or mortgage of property to be acquired in futuro is void; and if it can be upheld in equity, we apprehend it is only valid as a contract to assign when the property shall be acquired, and not as an assignment of a present interest; and if enforceable in equity at all, it can only be en-

forced as a right under the contract, and not as a trust attached to the property. And whatever equitable rights Ross may have acquired as against Seibert by the attempt to mortgage property afterward to be acquired, it is obvious that, restricted as are the rights of mortgagors under our statutes of conveyance and registration, Ross derived by the mortgages no available right to the subsequently acquired property as against the creditors of Seibert." To the same effect are Loth & Haas v. Carty, 85 Ky. 591; Manly v. Bitzer, 91 Ky. 596.

In Hutchinson, McChesney & Co. v. Ford, 9 Bush., 318, which involved questions very similar to the ones here presented, it was determined, as stated in the syllabus, that "A mortgage of a crop to be raised on a farm during a certain term passes no title if the crop was not sown when the mortgage was executed, and the mortgagee has no claim against a purchaser of the crop for it or its value." To the same effect are Vinson v. Hallowell, 10 Bush. 538; Haden v. Lindsay, 17 Ky. L. R. 1409; Patterson v. Louisville Trust Co., 17 Ky. Law Rep. 234.

Under these opinions the thing mortgaged must have an actual existence at the time of the execution of the mortgage, to the end that the mortgage will create a lien upon it. If the mortgage contemplates the acquisition by the mortgagor of the property described in the mortgage, after the execution of the mortgage, the mortgage will not, except as between the parties, create or be a lien on the property so subsequently acquired when it comes into existence.

There is an exception to this rule, however, which exempts from its operation the increase of female animals covered by a mortgage, as was pointed out in Forman v. Proctor, 9 B. Mon. 124; and property acquired under certain circumstances by a corporation in the exercise of powers conferred by its charter, as was pointed out in Phillips v. Winslow, 18 B. Mon., 431.

Nor do we attach controlling importance to the circumstance that the tobacco plants with which it was intended to set out the crop of tobacco, and that were in fact used for this purpose, were actually growing in a plant bed at the time of the execution of the mortgage. It was the tobacco to be grown on the rented premises from plants to be set out in due season and weeks after the execution of the mortgage, on which the mortgage was intended to create a lien. Whether the plants grow-

ing at the time the mortgage was executed produced the crop of tobacco is of no materiality, because the mortgage was not intended to embrace or create a lien upon the plants then growing in the plant bed. Obviously the fact that these plants were growing at the time did not enter into or become a part of the mortgage contract and were not in contemplation of the parties at the time the mortgage was executed. It might as well be said that because the seed corn which it was expected would be planted in raising a crop of corn was in existence when a mortgage upon the crop of corn intended to be planted, was executed, the property covered by the mortgage had an existence at the time of its execution. The validity of a mortgage upon a crop to be planted and grown cannot in any manner be affected by the source from which either the seeds or the plants that will furnish the contemplated crop are obtained.

The remaining question is, did Cheatham, as between himself and the assignee of Tennell, have by virtue of the mortgage an equitable lien on the tobacco and its proceeds superior to the rights acquired by the assignee?

Kelley, as the assignee of Tennell, does not occupy the advantageous attitude of a purchaser without notice or a creditor under an execution or other process. His position is no better than that of his assignor, Tennell. Generally speaking, an assignee can assert no rights that his assignor could not have asserted, and usually any equity which might have been enforced against the assignor is equally as available against the assignee. Exchange Bank v. Stone, 80 Ky. 109; Bridgford v. Barbour, 80 Ky. 529; Ky. National Bank v. Louisville Bagging Co., 98 Ky. 371; Cincinnati Leaf Tobacco Warehouse Co. v. Combs, 109 Ky. 21; Ray v. First National Bank, 111 Ky. 377; Industrial Mutual Deposit Co. v. Taylor, 118 Ky. 851; Reid v. Owensboro Savings Bank & Trust Co., 141 Ky. 444.

If then the question of Cheatham's right to an equitable lien on Tennell's part of this tobacco crop had come up in a controversy between him and Tennell, it can hardly be doubted that the lien asserted by Cheatham would be sustained. Tennell would not be heard to say that Cheatham did not have an equitable lien on the crop upon the ground that it did not have either a potential or an actual existence at the time of the mort-

gage. As between the parties the lien of Cheatham would have come into life when the property upon which the lien was given came into a potential or actual existence. In other words, the mortgage was not void as between the parties; and whenever the mortgagor acquired by whatever means or method the subject matter of the mortgage, it then came under and subject to the lien of the mortgage to the same extent as if it had been in existence at the time the mortgage was executed. It therefore being clear that as between the parties to the mortgage Cheatham would have a valid, enforcible equitable lien on the tobacco, it follows that as the transaction was not tainted with fraud or in violation of any statute, the assignee does not occupy any better position than Tennell would occupy; and this being so, the equitable lien of Cheatham followed the property into the hands of the assignee and was superior to the right of the assignee for the benefit of the creditors of Tennell.

This principle as applied to the facts of this case is supported by abundant authority, the rule being that equitable rights may grow out of a contract that will be available to protect parties to the contract from disadvantage or loss which they would sustain if their rights were to be determined by the strict letter of the contract, or if they could not assert any claim except such as existed by the very terms of the contract itself. Thus it is stated in Jones on Chattel Mortgages, section 170, that:

"In the preceding sections it has been shown that a mortgage of future property is void, at law, as against others acquiring an interest in it, except in case the mortgagee takes possession of such property before any adverse interests have been acquired. A different rule, however, prevails in equity. There, while such mortgage itself does not pass the title to such property, it creates in the mortgagee an equitable interest in it, which will prevail against judgment creditors and others, although the mortgagee has not taken possession of the property, and the mortgagor has done no new act to confirm the mortgage. The ground of the doctrine is, that the mortgage, though inoperative as a conveyance, is operative as an executory agreement, which attaches to the property when acquired, and in equity transfers the beneficial interest to the mortgagee, the mortgagor being re-

garded as a trustee for him in accordance with the familiar maxim that equity considers that done which ought to be done." To the same effect is McCaffrey v. Woodin, 65 N. Y. 459, 22 Am. Rep. 644.

In 6 Cyc. 1052, it is also said that "It is the settled American rule, following an early decision of Judge Story, that a mortgage of future property, although invalid at law, is good in equity as against the mortgagor and all persons claiming through him, with notice, or voluntarily, or in bankruptcy, even if the mortgagee has not taken possession of the property and the mortgagor has done no new act to confirm the mortgage. The mortgage operates as a contract to assign as soon as the mortgagor acquires the property, which lien is enforced in equity as a lien attaching to the property, on the maxim that equity considers as done that which ought to be done." See further Manly v. Bitzer, 91 Ky. 596; Holt v. Thurman, 111 Ky. 84; Levi v. Loevenhart, 138 Ky. 133.

Wherefore, the appeal is granted and the judgment reversed with direction to enter a judgment giving Cheatham the proceeds of the tobacco in the hands of the assignee to the extent that it may be necessary to satisfy the amount due on his mortgage debt.