## McFerran v. Louisville Title Company's Receiver (two cases).

(Decided May 15, 1934.)

BOOTH & CONNER, J. VERSER CONNER and OSCAR BADER for appellant.

TRABUE, DOOLAN, HELM & HELM for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In an action pending in the Jefferson circuit court, and involving the settlement of accounts of the Fidelity & Columbia Trust Company as receiver of the Louisville Title Company, Calvin W. McFerran filed an intervening petition, claiming that as auctioneer he sold certain real estate for the Louisville Title Company which agreed to pay him 5 per cent. of the sale price for his services; that the sales were consummated shortly before the appointment of the receiver; that the cash deposits were collected by him and paid over to the title company; and that he was entitled to a lien upon those deposits for the amount of his commissions. On November 9, 1932, an order was entered sustaining the receiver's demurrer to the intervening petition in so far as it sought a lien on any money in the hands of the receiver, and McFerran prayed and was granted an appeal.

On April 10, 1933, McFerran filed an amended intervening petition containing the following allegations: It was agreed that he should be paid for his services as auctioneer in selling each of the pieces of property 5 per cent. of the sale price thereof; that each of the successful bidders should be required to make a cash deposit with the petitioner at the time the bid was accepted; that so much of said cash deposit as would represent the agreed com-

pensation of petitioner should be retained oy him from the cash deposit so made; and that the balance of said cash deposit should be paid over and delivered by petitioner to the Louisville Title Company. Pursuant to such agreement, each of the successful bidders was required to and did deposit with the petitioner the amount agreed on, but said deposits were made in the form of checks, some of which were payable to the petitioner and some of which were payable to the Louisville Title Company. Said checks in each instance were for a sum larger than the commission due petitioner, and it was necessary that same be cashed and the proceeds thereof be divided between the petitioner and the Louisville Title Company pursuant to the agreement. Each of the sales was made by the petitioner during the week preceding the appointment of the receiver. The petitioner returned to Louisville from the sales trip on Saturday, June 20th, after business hours. None of the sales had been closed by the delivery of deeds or the payment of the purchase price by the several purchasers except for the deposit of said checks representing a small part of the purchase price in each instance. It was necessary to make some arrangement for cashing said checks for said deposits and dividing the proceeds thereof between petitioner and the title company. Thereupon it was agreed between the petitioner and the title company that said checks, which were drawn upon banks located in Paducah, Madisonville, and Hopkinsville, should be delivered into the custody of the title company, that the title company should collect the proceeds of said checks, and, upon the collection thereof, should deliver to the petitioner his share of the respective deposits. Said checks were delivered to the title company on June 22, 1931, and on the same day the title company deposited the checks for collection in Louisville banks, and were forwarded by said banks to the banks in the respective towns on which they were drawn. None of the checks was paid until after the appointment of a receiver on Tuesday, June 23, 1931. The receiver collected the several checks, and now has the proceeds thereof, including that portion of the proceeds belonging to petitioner, in his possession. By reason of said facts, petitioner became and is now entitled to said sums described in his original petition, and his claim thereto is superior to that of the Louisville Title Company or any of his creditors. The chancellor permitted the amended intervening petition to be filed, but treated the objection

to the filing as a demurrer which he sustained, and entered an order on August 21, 1933, dismissing the petition. McFerran has appealed from that order, and prosecuted a separate appeal from the first order sustaining a demurrer to the original petition

At the outset we are met by a motion to dismiss the appeal from the judgment of August 21, 1933. The argument is that the order of November 9, 1932, is final, or, if not final, then the judgment of August 21, 1933, is not final for the same reason. The order of November 9, 1932, was not final for the reason that the court did not dismiss the petition or any portion thereof, but merely sustained a demurrer to that portion of the petition asserting a lien. King v. Christian County Board of Education, 229 Ky. 234, 16 S. W. (2d) 1053. As the order was not final, the court was not deprived of jurisdiction, but had the power to disregard the order at any time and permit the amended petition to be filed. Miller's Appellate Practice, sec. 38. With respect to the order of August 21, 1933, the situation is different. By that order the court not only sustained a demurrer to the amended intervening petition, but dismissed the petition. In the circumstances the judgment settled the rights of the parties, put an end to McFerran's claim, left nothing else to be done, and was therefore a final order. Therefore the motion to dismiss the appeal from that judgment is overruled; but, as the order of November 9, 1932, was not final, the appeal from that judgment is dismissed on the court's own motion.

In addition to numerous other kinds of liens, none of which is here involved, we have in law what are known as common-law liens and equitable liens. Common-law liens depend on possession, and end with the surrender of possession. Equitable liens, which do not depend on possession (Gregory v. Morris, 96 U. S. 619, 24 L. Ed. 740; Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075), are of two kinds (1) those that may be implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and circumstances of their dealings, and (2) those that arise from a contract which shows an intention to charge some particular property with a debt or obligation (Carpenter v. Dummit, 221 Ky. 67, 297 S. W. 695; Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 43 A. L. R. 1409); and such liens will be enforced not only as between the parties, but as against

one who takes with notice, or, like an assignee or receiver, stands in the shoes of the debtor (In re Interborough Consolidated Corporation [C. C. A.] 288 F. 334, 32 A. L. R.

Equitable ..ens of the first class are usually based on the doctrine of estoppel. Examples of that class are vendor's liens, liens for improvements, innocently made on another's property, liens on property paid for which the seller cannot deliver, or is entitled to recover, and liens on property fraudulently purchased or improved with the funds of another. Bullitt v. Eastern Kentucky Land Co., 99 Ky. 324, 36 S. W. 16, 18 Ky. Law Rep. 230; Elliott v. Walker, 145 Ky. 71, 140 S. W. 51; Carpenter v. Dummit, supra.

Examples of equitable liens arising out of contracts are Geddes v. Reeves Coal & Dock Company (C. C. A.) 20 F. (2d) 48, 54 A. L. R. 282, holding that an agreement to pay one a percentage of the amount recovered through the audit of freight bills of the promisor fixed a lien upon the sum when recovered; Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208, holding that an agreement between Robert G. Ingersoll and five of the heirs of Andrew J. Davis, whose will excluded them from sharing in his estate, that, if Ingersoll would defeat the probate of the will, they would pay him $100,000 out of their respective shares of the estate thereby saved, created a lien on funds in favor of Ingersoll; and Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530, holding that a contract by which an attorney agreed to give two other attorneys one-third of his contingent fee if they would attend to the case created a lien on the fund recovered under the agreement. Though in most cases where equitable liens arising out of contracts have been enforced, the contracts have been in writing, the rule is not confined to written contracts. On the contrary an equitable lien may result from a verbal agreement, provided the intention clearly appears. Barnes v. Alexander, supra; Great Northern State Bank v. Ryan (C. C. A. 8th) 292 F. 10; Jackman v. Newbold (C. C. A.) 28 F. (2d) 107, 62 A. L. R. 729; Walker v. Harris' Ex'rs (Ky.) 114 S. W. 775.

As McFerran surrendered possession of the cash deposits, he is not entitled to a common-law lien on the deposits. Nor do we find present any elements that would support an equitable lien not based on a contract.

No funds of his were fraudulently converted or innocently used in the improvement of the property of another. No case of resisting equity is presented. He recovered nothing, and no fund was brought into existence by his efforts. Even though entitled to receive the cash deposits, his relation to the title company did not differ essentially from that of any other agent employed to perform a particular service at a particular price. In the circumstances, a denial of a lien would work no hardship. Not being entitled to a common-law lien or an equitable lien arising out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings, McFerran's right to a lien depends solely on the terms of the contract pleaded. Briefly stated, the facts relied on are these: It was agreed between McFerran and the title company that he was to be paid for his services 5 per cent. of the sale price of the property; that the successful bidders should be required to make a cash deposit with him at the time the bids were accepted; that so much of the cash deposit as represented the agreed compensation should be retained by him; that the balance of the cash deposits should be paid over to the Louisville Title Company. The cash deposits were made in the form of checks, some of which were payable to him and some payable to the title company. It was necessary that the checks be cashed and the proceeds divided. It was then agreed that the checks should be delivered to the title company for collection, and that upon the collection thereof it should deliver to him his share of the respective deposits. The receiver collected checks and now has the proceeds. If these allegations be true, there was an agreement showing an intention to charge the cash deposits with the payment of McFerran's commission, and therefore entitling him to a lien on the proceeds of the checks turned over to the title company for collection and collected by the receiver. It follows that the demurrer to the amended intervening petition should not have been sustained.

Judgment reversed, and cause remanded, with directions to overrule the demurrer, and for other proceedings not inconsistent with this opinion.