## Sandy Valley Grocery Co. et al. v. Patrick et al.

(Decided March 19, 1937.)

HOWES & WALKER and WHEELER & WHEELER for appellants.

HOWARD VAN ANTWERP, Jr., for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The various appellants were creditors of Paris Pelphrey and Beulah Pelphrey, who were jointly engaged in operating two retail grocery stores in the city of Ashland, Ky. The indebtedness of the separate appellees was evidenced by notes executed by the two Pelphreys, to secure which they executed mortgages on the contents of the two grocery stores, all of which occurred in 1932. The debtors remained in possession of the mortgaged stocks of merchandise and operated them until January 11, 1935, when appellants filed this equity action against them in the Boyd circuit court to foreclose their mortgages. Upon their motion the court appointed a receiver to take charge of and operate the two stores until the further orders of the court. That was done for a period of three months, when the court directed a sale of the property by the receiver under specified terms, which he carried out according to the directions of the judgment. Through the operation of the stores, by the receiver, plus the proceeds of sale, there came into his hands for distribution among creditors slightly more than $2,000 after paying expenses of the sale and the operation of the two stores.

In the meantime other general creditors of the Pelphreys intervened and set up their claims. There were a large number of others who filed their claims with the receiver before he made his final report. Prior thereto an issue arose between the general creditors and appellants, as mortgagees of the two stocks of merchandise, as to whether the latter had a superior lien against the proceeds in the hands of the receiver so as to prefer their debts over those of the general creditors, the stocks having completely changed since the time the mortgages were given. The receiver in his report recommended that appellants were not entitled to such preference and that they should participate in

the distribution of the proceeds as general creditors with all of the others of that class. Appellants filed exceptions to that item of the report, and on final submission thereof to the court it sustained the recommendation of the receiver and entered judgment accordingly, to reverse which appellants prosecute this appeal.

The mortgages given to appellants expressly provided for the lien therein created to attach to and embrace all subsequently acquired stock that the mortgagors might add to their supply and whereby the stock would become replenished because of sales therefrom made in due course of the operation of the business. It will thus be seen that the sole question for determination is—whether or not it is competent as against third persons for a mortgagor to place in lien future acquired property which is not owned by him, potentially or otherwise, at the time he executed the mortgage or gave the lien?

When the question first came before the courts for determination they were confronted by the rigid provisions of the common law relating to mortgages as it then existed. Those principles were, that the mortgagee by virtue of the mortgage became the title holder to the property with a condition that, if the mortgagor would discharge the indebtedness according to the terms of the mortgage, the conveyance (mortgage) would be null and void. Reasoning from that standpoint, it was declared that no one could convey property that he did not then own and that such an attempt was void as to third parties, but valid as between the immediate parties thereto on the ground that the stipulation for encumbering future acquired property, as contained in the encumbering instrument, was tantamount to an agreement on the part of the mortgagor to place the future acquired property in lien as soon as he became vested with the title to it, and that equity would regard that as done which should be done. Therefore the conclusion was reached that at law such a mortgage of future acquired property was void, but in equity as between the parties it would be enforced on the principle stated.

The general rule as so stated and as finally formulated is declared in this excerpt from 5 R. C. L. 403, sec. 27: "At common law a chattel mortgage can operate only on property actually in existence at the time

of giving the mortgage, and then actually belonging to the mortgagor, or potentially belonging to him as an incident of other property then in existence and belonging to him. The decisions, however, have not been uniform in applying this common law doctrine, and exceptions and limitations have been engrafted on it. For example, under the common law rule it would seem clear that a provision in a mortgage on a stock in trade that goods purchased to replace those sold shall become subject to the mortgage is a nullity at law, and yet it is sometimes held that this is not the case, apparently making an exception as to this class of mortgages. In equity while a chattel mortgage of after-acquired property passes no title to such property, it operates to create an equitable interest in the mortgagee under the maxim that equity considers that as done which ought to be done, the mortgage being deemed to be an executory agreement which attaches to the property when acquired. The equitable doctrine has been rejected in some jurisdictions, in so far as the rights of third persons are concerned.''

Some of the many Kentucky opinions acknowledging and applying such general rule, in the abstract, are Forman v. Proctor, 9 B. Mon. 124; Phillips v. Winslow, 18 B. Mon. 431, 68 Am. Dec. 729; Ross v. Wilson Peter & Co., 7 Bush, 29; Hutchison v. Ford, 9 Bush, 318, 15 Am. Rep. 711; Loth & Haas v. Carty, 85 Ky. 591, 4 S. W. 314, 9 Ky. Law Rep. 131; Manly v. Bitzer, 91 Ky. 596, 16 S. W. 464, 13 Ky. Law Rep. 166, 34 Am. St. Rep. 242; Bank of Louisville v. Baumeister, 87 Ky. 6, 7 S. W. 170, 9 Ky. Law Rep. 845; Wender Blue Gem Coal Co. v. Louisville Property Company, 137 Ky. 339, 125 S. W. 732; Cheatham v. Tennell's Assignee, 170 Ky. 429, 186 S. W. 128; Moulder Holcomb Co. v. Glasgow Cooperage Co., 173 Ky. 519, 191 S. W. 275; United States Cast Iron, Pipe & Foundry Co. v. Henry Vogt Manufacturing Co., 182 Ky. 473, 206 S. W. 806; Rosenberry v. Thompson, 8 S. W. 895, 896, 10 Ky. Law Rep. 332, and cases cited in those opinions, together with many others rendered by this court. All text-writers on the subject acknowledge the existence of the general rule as so stated, but they, as well as courts (inlcuding this one, in some of the cited domestic opinions), have engrafted exceptions upon the general rule, as so broadly stated, whereby a mortgagee may acquire a superior lien as

against third persons upon property not in existence at the time of the execution of the lien, but which issued out of it or were potential accretions to it. Such exceptions are made to embrace progeny of mortgaged animals as well as, in a modified form, rents, profits, and produce from mortgaged real estate. The two cited B. Mon. cases, supra, are illustrations of the exception as applied to the increase of mortgaged animals, and the three late cases of Watt's Adm'r v. Smith, 250 Ky. 617, 63 S. W. (2d) 796, 91 A. L. R. 1206, Louisville Joint Stock Land Bank v. Watts, 251 Ky. 832, 66 S. W. (2d) 39, and Southern Trust Co. v. First-City Bank & Trust Co., 259 Ky. 151, 82 S. W. (2d) 205, are illustrations of the modified exception as to future rents, profits, etc., from mortgaged real estate. The departure in the last three cases from the general rule was only a partial one, going only to the extent of upholding the lien of such future property issuing from the operation of real estate as was on hand and undisposed of at the time of proceeding to enforce the collection of the debt.

Another relaxation of the broadly stated general rule may be found in the Glasgow Cooperage Case, supra, and others therein referred to, and which upholds the lien on future repairs to mortgaged machinery or other auxiliary parts of the mortgaged property so as to maintain it in efficient operating condition after being placed in trust to secure creditors with such authority in the trustee · or trustor. Manifestly, this case does not come within any of the exceptions to the general rule. Rather is it embraced and governed by the rule announced in 11 C. J. ·581, sec. 275, saying: "Under another line of authorities a mortgage is fraudulent and void which permits the mortgagor to sell from stock from time to time, although he agrees to replace any stock sold with stock of equal value; and a mortgage which is valid on its face is invalidated by collateral permission to this effect." A great many supporting cases are cited in the notes to that text, and it is shown to be the almost universally prevailing rule in this country.

In the annotation in 73 A. L. R. to the Wisconsin case of Ross v. State Bank, 198 Wis. 335, 224 N. W. 114, 73 A. L. R. 225, and Turk v. Kramer, 138 Okl. 35, 280 P. 266, 73 A. L. R. 229, in the annotation beginning on

page 236, it is said: "Under the common law a chattel mortgage on personal property was void unless the possession of said property was retained by the mortgagee." The writer points out the harshness of that rule when strictly administered and cites developed exceptions in an effort to ameliorate its strictness under varying conditions set out in the annotation, but which are too complicated and extensive to incorporate in this opinion. However, none of them appear in this case, which, as we have seen, is a mortgage of a stock of goods with the express agreement and consent on the part of the mortgagee for the mortgagor to not only retain possession, but to make sales of the mortgaged property from time to time. All of the text-writers and foreign opinions, as is shown in the annotation referred to, decline to uphold such an arrangement or to enforce the rights thereby attempted to be conferred on the mortgagee against general creditors, who become such without actual knowledge of the terms of the mortgage agreement as between the parties therto.

The Ross Case, supra (7 Bush, 29) is one in which the facts were on all fours with those appearing in this case. There the creditor had secured his debt by mortgages on a drugstore stock with the right of the mortgagor to continue to operate it as he had done in the past. He later became insolvent with the mortgage debt unpaid. An unsecured creditor, who became such after the execution of the encumbrances upon the stock, contested the right of the mortgagee to a preference in the settlement of the insolvent mortgagor's affairs. The trial court upheld that contention, which was affirmed by this court, and which was later followed in the Loth and Manly cases, supra, and that holding was approved as the correct rule in all of the domestic cases to which reference has been made. Of course this opinion is intended to and will apply only to situations in substantial conformity with the facts in this case, since we hereby expressly withhold any opinion upon a different state of facts, many of which are shown in the text of, and some of the cases enumerated in, the annotation supra, under its various subtitles and divisions. The Ross Case, supra, and later ones from this court approving it, sustain the priority of the mortgagee in the character of mortgages under consideration as to property that was on hand at the time of the acquirement of the lien, but

774

which is contrary to the holding of some other courts, as appears from the annotations referred to.

Were the question one of first impression—and if it were less universally approved—we would be more inclined to follow our inclination to say that a mortgage of the kind here being dealt with, if duly recorded so as to furnish constructive notice, would prevail over all creditors who became such thereafter—the same as the acquiring of actual knowledge of the fact of an unrecorded lien. The basis of such inclination is that we are unable to perceive any fraud lurking therein, and therefore no invasion of any public policy principle arising from such an encumbering transaction, if it is made in good faith and bona fide observed thereafter. It is difficult to see any greater objections thereto than to a lien put upon existing property which continues to remain in the same, or practically the same, condition until the time of enforcement of the lien. If third parties dealing with the mortgagor possess either actual or constructive notice of such prior bona fide transaction, we fail to see wherein they should not be bound by the mortgage when with such knowledge they consent to the creation of their subsequent debts. But, however that may be, the stare decisis rule, so overwhelmingly adopted and approved by this and all courts, admonishes us that we should not depart therefrom, it involving a rule of property.

Wherefore, for the reasons stated, the judgment is affirmed; the whole court sitting.