### SCOGGAN v. DILLON et al.

Court of Appeals of Kentucky.
Oct. 24, 1952.

Steinfeld & Steinfeld, Louisville, for appellant.

Edward T. Ewen, Jr., Louisville, for appellees.

STANLEY, Commissioner.

The judgment appealed awards equitable liens against the proceeds of the assets of an insolvent corporation in receivership, superior to claims of antecedent general creditors and subsequent creditors with notice.

The appellees, Mary Lou Dillon and George Lemke, loaned or advanced $5,000 and $4,000, respectively, to the American Distributing Company, whose property is in receivership, under the terms of identical instruments styled and called in the body a "trust agreement." They were executed on June 11, 1949. The pertinent terms may be abbreviated. The money was to be deposited in the Bank of Louisville in the name of the company as a "trustee's fund" and remain the property of the respective parties, and, also (somewhat contradictorily), a lien was "hereby given, sold and assigned" on the fund. This money was to be used only for the purchase of merchandise by the company and the lien should rest on that. The lien was declared to be "paramount" on the merchandise and the "bank account." When the merchandise so purchased had been sold, the proceeds to

the amount of the purchase price would be redeposited in the bank account as the "sole property of Mrs. Dillon." The lien also covered accounts receivable of the company. Lemke's agreement is the same. These instruments were recorded as chattel mortgages. The agreements were scrupulously carried out. The merchandise bought with the money was kept separate and apart from other stock of the company and marked, "T. F." (symbolizing "Trust Fund") for identification, and the accounts receivable were properly marked as being part of the trust. When collected, the money was deposited in the special bank account of the company.

Though the purpose was to secure the notes representing the money advanced, we agree that as chattel mortgages the instruments to the extent they cover merchandise and accounts receivable are ineffectual as against third parties. It is merely recited that the liens covered "the inventory of merchandise bought with the money herein advanced and stored on the premises of the American Distributing Company." Its address was not stated. There is inadequate identification and location of the merchandise. Hart County Deposit Bank v. Hatfield, 236 Ky. 725, 33 S.W.2d 660. But a less degree of certainty in identification of the property mortgaged is required as between the parties to the instrument. 10 Am.Jur., Chattel Mortgages, Secs. 54–56.

Furthermore, with respect to the merchandise, the case is not one where there was a mortgage on an existing stock of goods belonging to the mortgagor with the right to sell and replace it. All these goods were to be purchased in the future and then when sold replaced in due course of business. The question of validity of a mortgage on property to be acquired thereafter is often a troublesome one, and there is lack of harmony in the decisions. 10 Am.Jur., Chattel Mortgages, Secs. 29, 32, 162–164.

In McFerran v. Louisville Title Company's Receiver, 254 Ky. 362, 71 S.W.2d 655, 657, we pointed out that common law liens depend on possession of the property and end with surrender of possession but

that equitable liens do not so depend. It is noted in the opinion that an equitable lien may arise from a contract which shows an intention to charge some particular property with a debt or obligation and that such lien "will be enforced not only as between the parties, but as against one who takes with notice, or, like an assignee or receiver, stands in the shoes of the debtor." The case related to an interest in proceeds of property to be sold. In Cincinnati Tobacco Warehouse Co. v. Leslie & Whittaker's Trustee, 117 Ky. 478, 78 S.W. 413, 64 L.R.A. 219, it was held that a corporation which advanced money for the purchase of tobacco to be shipped to it for sale under an agreement that it was to have a lien on the tobacco so purchased and that the debt for advances, commissions, insurance, etc. should be paid out of the proceeds of the sales when made, had an equitable lien upon the tobacco so purchased. And in Cheatham v. Tennell, 170 Ky. 429, 186 S.W. 128, L.R.A.1917C, 1, we held that a mortgagee of crops to be grown in the future as security for past advances had no lien by virtue of the mortgage alone, because the subject matter was not in existence, but that such an instrument gave rise to an equitable lien in favor of the mortgagee which was valid as between the parties and superior in equity to the rights of an assignee for the benefit of the mortgagor's creditors since he occupied no better position than the mortgagor.

Concerning a mortgage on a replenished stock of merchandise, the original having been sold in course of the business, the authorities are in conflict. The weight of authority seems to be that such mortgage, though a nullity at law, operates to create an equitable interest in the mortgagee under the maxim that equity considers that done which ought to be done, the mortgage being deemed to be an executory agreement which attaches a lien upon the property when acquired. This concept was recognized as the better one in Sandy Valley Grocery Co. v. Patrick, 267 Ky. 768, 103 S.W.2d 307. But the court was reluctantly driven to a contrary conclusion under the doctrine of stare decisis and held that such a lien on a stock of merchandise was invalid as against

creditors who became such after its execution and did not entitle the mortgagee to preference to proceeds in the hands of a receiver. It is to be noted that in that case there were no restrictions placed on the mortgagor or lienor in his possession and use of the property, nor any lien or assignment of rights in the funds furnished for its purchase. In the instant case there was a specific trust established. The merchandise afterward acquired and the accounts receivable from the sale thereof were not only placed under the trust by the instrument but were in fact segregated or set apart and marked as being trust property. The Sandy Valley Grocery Company case barely carries its own weight. The court expressly stated that the decision should apply only to substantially the same facts and that it reserved opinion in cases presenting a different state of facts.

While the location of the bank deposit or account is specifically identified, we are of opinion that it was not subject to being mortgaged. One may not mortgage property or a right to which he does not have title. The deposit of money in a bank passes title and it becomes part of the assets of the bank with an implied contract that the sum will be repaid upon demand, the relationship of creditor and debtor being created. Denny v. Thompson, 236 Ky. 714, 33 S.W.2d 670; Dorman v. Adams, 247 Ky. 678, 57 S.W.2d 534. But it cannot be questioned that the depositor may make an assignment of a deposit, in whole or in part. Before the Negotiable Instruments Act became the law, a check was deemed to be a pro tanto assignment. Moreover, the present deposit was made as a trust fund for the particular purposes, and the execution of the instrument must be held to have been an assignment of the company's interest in the choses in action or claims which it had against the bank as a depositor.

Though the recording of an invalid chattel mortgage is not deemed to be constructive notice so as to give the holder priority over rights of others, Hart County Deposit Bank v. Hatfield, supra, 236 Ky. 725, 33 S.W.2d 660, we believe that the recording of the instrument as a "deed of

trust" was authorized by KRS 382.270, and, accordingly, gave constructive notice of its terms.

 We are of opinion, therefore, that the court rightly adjudged the appellees to have equitable liens effective and superior to the extent stated.

The judgment is affirmed.