405 F.2d 1043
 In the Matter of LECKIE FREEBURN COAL COMPANY, Bankrupt.
Octavia FOSTER, Billy Howard Smith, Clyde Heflin, Trustee, Ethel Smith and Judy Porter, Appellants,
v.
Willard M. HAMBLIN, Trustee in Bankruptcy, Appellee.
 No. 18363.
 United States Court of Appeals Sixth Circuit.
 January 29, 1969.
 
 Henry D. Stratton, Pikeville, Ky., for appellants.
 Jack L. Lewis, Paintsville, Ky., for appellee.
 Before CELEBREZZE, PECK and McCREE, Circuit Judges.
 CELEBREZZE, Circuit Judge.
 
 
 1
 This appeal comes to us from a judgment of the United States District Court for the Eastern District of Kentucky affirming the findings of fact and law of the Referee in Bankruptcy, Octavia O. Foster, Billy Howard Smith, Clyde Heflin, Trustee, Ethel Smith and Judy Porter, hereinafter Appellants, aver that their security interest in the bankrupt's mining machinery and equipment has priority over the lien arising under Section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c) in favor of Willard M. Hamblin, Trustee in Bankruptcy, hereinafter Appellee.
 
 
 2
 In a lease dated August 1, 1961, Leckie Freeburn Coal Company, Inc., hereinafter the Bankrupt, was granted the right to mine coal from 3,623.80 acres of land on the waters of the Johns Creek and Polk Creek in Pike County, Kentucky for a period of twenty years. The lease was filed in the Pike County, Kentucky Clerk's office. It was recorded in Deed Book 421, page 580 at that office on October 20, 1961 pursuant to KRS 382.080; KRS 382.110. The lease agreement was indexed as required under KRS 382.200. There was no separate instrument filed as a financing statement, pursuant to KRS 355.9-302, KRS 355.9-401, and KRS 355.9-402.[1]
 
 
 3
 Leckie Freeburn Coal Company mined coal on the premises until late in 1965 when it went bankrupt. At the time of its filing a petition for voluntary bankruptcy on January 14, 1966, there was no question but that the Bankrupt owed Appellant lessors $43,283.14 which included royalties accruing under the lease — plus a sum for taxes which the bankrupt lessee was obligated to pay.
 
 
 4
 Appellants are claiming a lien upon the mining machinery and equipment of the Bankrupt under Paragraph 17 of the lease agreement which provides as follows:
 
 
 5
 "It is further understood that the Lessee expects to acquire the tipple and preparation plant used by said former operator and to use the same together with other mining machinery and equipment owned by the Lessee in its operations hereunder; and it is agreed that said tipple, preparation plant and all of Lessee's mining machinery and equipment upon said premises shall be subject to a lien to secure unto Lessors payment of all rental and royalties which shall have become due and payable hereunder, and Lessors, their successors, heirs or assigns may enforce such lien by distress or otherwise as may be provided by the laws of Kentucky now or hereafter in force and effect. * * *"
 
 
 6
 The mining machinery and equipment which was located on the premises of Appellants and owned by the Bankrupt has been sold by the Trustee pursuant to a court order. Appellants now assert a lien upon the proceeds. It is their contention that the lease as filed in the Clerk's office complied with the Uniform Commercial Code. Therefore, Appellants' security interest would be superior to that of the Trustee in Bankruptcy.
 
 
 7
 Although the Uniform Commercial Code was adopted in Kentucky in 1958, it did not become effective until July 1, 1960. KRS 355.1-101. Since the effective date is prior to the filing of the instrument, both the filing and instrument would have to comply with the Uniform Commercial Code in order to create a security interest in the personalty which would be superior to the lien of the Trustee. It remains undisputed that the security agreement is governed by the Uniform Commercial Code.
 
 
 8
 The Uniform Commercial Code as adopted in Kentucky changed the concept of security transactions. The purpose is to uniformly regulate security devices concerning personal property and fixtures. KRS 355.9-102. It prescribes the proper and necessary methods for the perfection of a security interest against third parties. KRS 355.9-402.
 
 
 9
 The issue before this Court is whether the filing and subsequent recording of the lease agreement in the real estate Deed Book in the office of the County Clerk of Pike County, Kentucky, is sufficient under the Uniform Commercial Code to perfect a security interest in favor of the lessors [Appellants] on the mining machinery and equipment of the Bankrupt.
 
 
 10
 It is clear on the face of the instrument that the parties intended to create a non-possessory security interest. Since the security interest was created in personal property, it is governed by the Uniform Commercial Code. KRS 355.9-102; KRS 355.9-104; KRS 382.200(2). In order to perfect such a security interest under the facts of this case the Uniform Commercial Code requires the filing of a financial statement pursuant to Part 4 of Article 9, KRS 355.9-401 to 406 and KRS 355.9-302. If it were unperfected at the time of the filing of the petition for bankruptcy, the Trustee's lien would have priority over it. KRS 355.9-301(1) (b); KRS 355.9-301 (3). See In The Matter of Luckenbill, D.C., 156 F.Supp. 129, 130 (1957).
 
 
 11
 Appellants contend that their filing of the lease with the Clerk of Pike County was in substantial compliance with KRS 355.9-401 requiring the filing of a financial statement with the Clerk of Pike County in order to perfect its lien. KRS 355.9-302.
 
 
 12
 This Court is of the opinion that the filing of the lease with the Clerk and its proper recordation in the Deed Book does not effectuate a perfected security interest in the personalty in compliance with the Uniform Commercial Code. This Court is cognizant of the long line of property cases cited by Appellants which seem contrary to this Court's position, but also notes that none of them relate to decisions under the Uniform Commercial Code.
 
 
 13
 It is true that the proper Clerk did receive the instrument for filing under either KRS 382.110 or KRS 355.9-401, However, this was not sufficient to comply with the Uniform Commercial Code. When one takes into consideration (1) that KRS 382.200 which provides for cross indexing of instruments filed under KRS 382.110 refers those filing chattel mortages, financing statements or security agreements to KRS 355.9-403 and (2) that separate fees exist for each type of filing, more is required of the filing party than to just hand the instrument to the Clerk. KRS 64.010. When dealing with a multi-purpose document, it is incumbent upon the filing party to disclose to the Clerk the purpose for recording. In the present case the record does not show that Appellants had directed the Clerk to record the lease as a financing statement when they paid the filing fee. Had specific directions been proved, this Court would be faced with a different situation. Here we are not faced with the problem of an improper recording.
 
 
 14
 Appellants further contend that the lease as recorded in the Deed Book is constructive notice to all, not only as to the lease agreement, but also as to the security interest created therein. Their theory is based upon cases dealing with an improper recording. Great Western Petroleum Company v. Samson, 192 Ky. 814, 234 S.W. 727 (1921). To allow constructve notice in this case would defeat the purposes of the recording statutes. One object of filing a financial statement is to insure a bona fide purchaser that his title will not be encumbered. For the Court to hold that the filing of this instrument as a lease provided constructive notice to those searching the records for a financing statement would be wholly illogical. In Re King Furniture City, Inc., D.C.Ark.1965, 240 F.Supp. 453, Henry v. Louisville Rolling Mill Co., 7 Ky.Op. 295 (1873). It is the opinion of this Court that it is implicit in the Kentucky statutory scheme that if a party intends a single document to serve multiple purposes and where each purpose requires recording to effectuate its validity, duplicate instruments must be supplied and the Clerk must be informed as to the purpose for which each is to be recorded. See Bender's Uniform Commercial Code Service, Section 16.05. This Court is in agreement with the District Court in upholding the decision of the Referee in Bankruptcy.
 
 
 15
 Appellee contends that since the lease purported to create a security interest in after-acquired property and granted the Bankrupt the power to sell the collateral, the lease would be void under a long line of Kentucky decisions decided prior to the effective date of the Uniform Commercial Code. Phelps v. Turner, Ky., 351 S.W.2d 176 (1961); Scoggan v. Dillon, Ky., 252 S.W.2d 35 (1952); Sandy Valley Grocery Co. v. Patrick, 267 Ky. 768, 103 S.W.2d 307 (1937).
 
 
 16
 In the Scoggan case, supra, the Court stated, in affirming Sandy Valley Grocery Co. v. Patrick, supra, that:
 
 
 17
 "the court [in Sandy Valley] was reluctantly driven to a contrary conclusion under the doctrine of stare decisis and held that such a line on stock of merchandise was invalid as against creditors who became such after its execution and did not entitle the mortgagee to preference to proceeds in the hands of a receiver."
 
 
 18
 However, in the later decision although still governed by the law prior to the adoption of the Uniform Commercial Code in Kentucky, the Court in Phelps v. Turner, supra, was also reluctant and belabored with the problem of once again affirming the Common Law doctrine that mortgages were illegal on after-acquired property, especially where the debtor had exclusive control. The Court was heartened by the knowledge that the Uniform Commercial Code would change the existing law. KRS 355.9-204; KRS 355.9-205. The Court stated:
 
 
 19
 "We affirm the judgment on the basis of the Sandy Valley case, comforted by the knowledge that the Uniform Commercial Code, KRS 355.9-204, now effective in this jurisdiction, permits mortgages an after-acquired goods." (Emphasis added).
 
 
 20
 Lastly, Appellants contend that the Uniform Commercial Code excludes this lien from its coverage under KRS 355.9-104(b). The Referee was correct in his interpretation that this Section of the Code was referring to liens created by statute, e.g., "Mechanics' Liens, Materialmen's Liens", etc., and not to a lien created by contract. In Re King Furniture City, Inc., D.C.Ark.1965, 240 F.Supp. 453.
 
 
 21
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Uniform Commercial Code sets out the formal requisites of a financing statement and also a form which may be used. KRS 355.9-402. However, a security agreement (or another instrument) which satisfies the formal requisites of KRS 355.9-402 may be filed as a financing statement