RENDERED: OCTOBER 1, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0205-MR

FIRST SOUTHERN NATIONAL
BANK                                                                        APPELLANT


|  | APPEAL FROM PULASKI CIRCUIT COURT |
| v. | HONORABLE DAVID A. TAPP, JUDGE |
|  | ACTION NO. 18-CI-00235 |


CUMBERLAND SECURITY BANK,
INC.; DON NICHOLS EXECUTOR OF
THE ESTATE OF CAROLE
WOEHLER A/K/A CAROLE D.
WOEHLER A/K/A CAROLE
NICHOLS; DON NICHOLS; MOLLY
NICHOLS; LARRY NICHOLS; FRAN
NICHOLS; KENNETH NICHOLS;
CHERYL NICHOLS; STEVE
NICHOLS; YVONNE NICHOLS;
AMY ERB; DANIEL ERB;
SOMERSET DEVELOPMENT, LLC;
BURNSIDE, KENTUCKY;
SOMERSET, KENTUCKY; PULASKI
COUNTY, KENTUCKY; AND THE
NEIGHBORHOOD VILLAS                                              APPELLEES
ASSOCIATION, INC.


AND

NO. 2019-CA-0206-MR

SOMERSET DEVELOPMENT, LLC                                    APPELLANT


                         APPEAL FROM PULASKI CIRCUIT COURT
v.                       HONORABLE DAVID A. TAPP, JUDGE
                         ACTION NO. 18-CI-00235


CUMBERLAND SECURITY BANK,
INC.; DON NICHOLS, EXECUTOR
OF THE ESTATE OF CAROLE
WOEHLER, A/K/A CAROLE D.
WOEHLER, A/K/A CAROLE
NICHOLS; DON NICHOLS AND
MOLLY NICHOLS, HIS WIFE;
LARRY NICHOLS AND FRAN
NICHOLS, HIS WIFE; KENNETH
NICHOLS AND CHERYL NICHOLS,
HIS WIFE; STEVE NICHOLS AND
YVONNE NICHOLS, HIS WIFE; AMY
ERB AND DANIEL ERB, HER
HUSBAND; FIRST SOUTHERN
NATIONAL BANK; CITY OF
BURNSIDE, KENTUCKY; CITY OF
SOMERSET, KENTUCKY; PULASKI
COUNTY, KENTUCKY; AND THE
NEIGHBORHOOD VILLAS
ASSOCIATION, INC.                                           APPELLEES


                              OPINION
                             AFFIRMING

                        ** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: In this case a mortgage listing both a condominium and a second piece of land as security was filed by the Pulaski County Clerk *only* in a book designated for "apartment mortgages." The question is whether that mortgage has priority over a later mortgage filed which involved the second piece of land. We conclude the mortgage filed in the apartment mortgage book has priority.

The core facts are uncontested. In 2013, Carole Woehler borrowed money from the Cumberland Security Bank (Cumberland). To secure that loan, Woehler granted Cumberland a mortgage on two separate properties: a condominium located in Somerset, Kentucky and land located on Grandview Avenue in Burnside, Kentucky (the Grandview property). In 2013, the mortgage, which describes both properties, was submitted to the Pulaski County Clerk for recording. The county clerk recorded the mortgage in an "apartment mortgage book."

Apparently without notifying Cumberland, Woehler sold the Grandview property to Somerset Development, LLC in late November 2016. To finance its purchase, Somerset Development received a loan from First Southern National Bank (First Southern), which was secured by a mortgage recorded in early 2017 with the county clerk. About three months later, Somerset Development refinanced its loan with First Southern, which was again secured by a

-3-

mortgage, which was recorded in a mortgage book by the county clerk on March 1, 2017. First Southern contends it obtained title opinions before issuing the original and refinanced loans, but neither opinion mentioned Cumberland's mortgage.[1]

After Woehler died, her loan from Cumberland went into default. Cumberland then filed suit against Woehler's executor, her next of kin and heirs at law, Somerset Development, First Southern, the City of Burnside, the City of Somerset, and Pulaski County, Kentucky (the localities were named as defendants in case there were any unpaid taxes).[2] The complaint asked the trial court to find that Cumberland had a "first, prior and superior lien[.]"

The condominium was later sold for an amount insufficient to satisfy Woehler's indebtedness to Cumberland. In October 2018, Cumberland filed a

---

[1] The timing of when the title opinions were rendered is suspect. First Southern asserts those title opinions were rendered before executing the original and refinanced loans to Somerset Development. First Southern's litigation officer averred the same in an affidavit. However, the dates on the title opinions *vis-à-vis* the loans seem to indicate the title opinions were obtained after the loans.

A member of Somerset Development averred in an affidavit that Somerset Development purchased the Grandview property from Woehler on November 30, 2016 and executed a promissory note to First Southern that same date, which was secured by a mortgage. The affidavit further states that pursuant to the refinancing Somerset executed another promissory note, again secured by a mortgage, to First Southern on February 28, 2017 (which was recorded on March 1, 2017). However, that same affidavit states that First Southern's title opinions were "dated December 2, 2016" and "March 1, 2017[.]" It is *extremely* unclear how a title opinion dated December 2, 2016 can predate a mortgage dated November 30, 2016, or how a title opinion dated March 1, 2017 can predate a mortgage dated February 28, 2017. First Southern has failed to explain adequately those temporal incongruities, but ultimately the timing of the title opinions does not change our analysis.

[2] None of the appellees, except Cumberland, has actively participated in this appeal.

motion for summary judgment; about two days later, Somerset Development and

First Southern filed a joint motion for summary judgment. The trial court

concluded that Cumberland and the county clerk had complied with their duties.

Thus, the trial court granted Cumberland's motion for summary judgment. Soon

thereafter, the trial court ordered the Grandview property to be sold by the Master

Commissioner. First Southern and Somerset Development then each filed a

separate appeal, which we ordered to be consolidated.[3]

The question before us is the same as that presented to the trial court:

Whether a mortgage secured by two parcels of real property, including a

condominium, which is recorded in an apartment mortgage book, rather than the

traditional mortgage book provides sufficient actual or constructive notice to give

Cumberland priority. We agree with the trial court that it does.

Under our familiar standards, summary judgment "shall be rendered

forthwith" if the record shows "that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Kentucky

Rules of Civil Procedure (CR) 56.03. Our Supreme Court has fleshed out CR

56.03 by explaining that:

> The trial court must view the evidence in the light most
> favorable to the nonmoving party, and summary
> judgment should be granted only if it appears impossible

---

[3] First Southern and Somerset Development have filed a joint brief. We shall hereafter refer to them jointly as First Southern.

that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present at least some affirmative evidence showing that there is a genuine issue of material fact for trial. The trial court must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. The word "impossible," as set forth in the standard for summary judgment, is meant to be used in a practical sense, not in an absolute sense. Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue de novo.

*Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010)

(internal quotation marks and citations omitted).

Kentucky is a race-notice state. *See* Kentucky Revised Statute (KRS) 382.270. In plain English, that means "the first person to the courthouse wins, unless he or she knows or should have known of a competing equity or prior claim." 3 KY. PRAC. *Real Estate Transactions* § 2:55 (2020). "Put another way, a prior interest in real property takes priority over a subsequent interest that was taken with notice, actual or constructive, of the prior interest." *Mortgage Electronic Registration Systems, Inc. v. Roberts*, 366 S.W.3d 405, 408 (Ky. 2012).

First Southern's argument that it did not have actual notice of Cumberland's prior mortgage on the Grandview property does not appear to be in

-6-

dispute. Instead, the key dispute at the heart of this appeal is whether First Southern also lacked constructive notice of Cumberland's prior mortgage.

First Southern argues that Cumberland's error in filing its mortgage prevented it from having both actual or constructive notice. It argues this occurred because Cumberland failed in its duty to make sure its mortgage was recorded in both the regular and apartment mortgage books. However, First Southern cites *no binding Kentucky authority whatsoever* which either: (1) made it improper for two pieces of property to be used as security for one mortgage or (2) required Cumberland to present two copies of its mortgage to the clerk, or to otherwise direct the clerk to file the mortgage in any particular record book(s). Instead, it relies on a federal appellate opinion rendered over fifty years ago for the proposition that "[w]hen dealing with a multi-purpose document, it is incumbent upon the filing party to disclose to the Clerk the purpose for recording." *In re Leckie Freeburn Coal Co.*, 405 F.2d 1043, 1046 (6th Cir. 1969).

Of course, "[a]s an initial matter, we note that we are not bound by a federal court's interpretation of state law." *LKS Pizza, Inc. v. Commonwealth ex rel. Rudolph*, 169 S.W.3d 46, 49 (Ky.App. 2005).

The document at issue in *Leckie* was intended to serve two separate, discrete functions: (1) as a lease and (2) as a UCC financing statement showing a security interest in mining property. *Leckie*, 405 F.2d at 1045-46. *See also* Ky.

-7-

OAG 81-33, 1981 WL 142318 (Jan. 26, 1981) (summarizing the holding of *Leckie* as being that "when someone tenders a multipurpose document to the clerk (in that case it was a single document which acted as a lease and as a security agreement to perfect a security interest in certain mining equipment) the party must provide the clerk with duplicates of the document, must inform the clerk as to the purpose for which each is to be filed, and must pay the appropriate fee for each filing.").

*Leckie* is materially distinguishable from the case at hand because Cumberland's mortgage was not a "multi-purpose" document. Instead, its sole recording purpose was to provide notice to subsequent creditors and purchasers of Cumberland's security interest in two pieces of property. We do not believe that Cumberland failed in any duty by not attempting to have its mortgage recorded in two separate books because while its mortgage encumbered two separate pieces of property, Cumberland's mortgage was not intended to serve two separate and legally discrete purposes.

Additionally, we note that regardless of what information a person delivering a document to a county clerk to be recorded provides about its purpose and where it should be recorded, it is ultimately in the clerk's discretion to record that document in the book that the clerk believes is appropriate. Therefore, while it may be the better practice for a person filing a document with the clerk to discuss why the document is being filed and what its purpose is and ask whether additional

copies need to be filed to fulfill that purpose, Cumberland's best efforts may not have provided First Southern with any better notice as Cumberland ultimately had no control over the fact that the clerk chose to record its mortgage in the apartment mortgage book. *See generally PBI Bank, Inc. v. Schnabel Foundation Co.*, 392 S.W.3d 421, 424 (Ky.App. 2013) (allowing equitable tolling to apply to untimely mechanics lien where the county clerk wrongfully rejected a proper and timely mechanics lien from being filed, explaining "[the contractor] could not force the county clerk to perform official duties and file the instrument.").

We also do not believe the county clerk committed any error in recording the mortgage in the apartment mortgage book. KRS 382.110(1) only requires a mortgage to be "recorded in the county clerk's office" in order to be "effectual against purchasers without notice, or creditors[.]" Notably, there is no requirement for the county clerk to record a mortgage in any particular record book, and we cannot "engraft language onto a statute in order to achieve a desired result" as "it is neither the duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there." *Crouch v. Commonwealth*, 323 S.W.3d 668, 674 (Ky. 2010) (internal quotation marks and citation omitted).

Perhaps the General Assembly did not require county clerks to file mortgages in any designated set of record books in KRS 382.110 because another

statute requires county clerks to create a cross-index of conveyances, including mortgages. *See* KRS 382.200(1). It is undisputed that the clerk here properly cross-indexed Cumberland's mortgage. That cross-index provided constructive notice of Cumberland's mortgage. In practical terms, that means the existence of Cumberland's mortgage was readily discernible for anyone checking Woehler's name in the cross-index.

Moreover, First Southern would not be entitled to relief even if the county clerk had failed to properly index Cumberland's mortgage. A century or so of Kentucky precedent has generally held that even an improperly indexed instrument provides constructive notice. As an illustrative example, in 1927, Kentucky's then-highest court held that "[w]here the clerk records an instrument which is recordable in his office, it is notice to all parties as provided by law, and this notice exists regardless of whether the clerk has properly indexed the instrument." *Seat v. Louisville & Jefferson County Land Co.*, 219 Ky. 418, 293 S.W. 986, 991 (1927). *See also, e.g.*, *Kentucky River Coal Corporation v. Sumner*, 195 Ky. 119, 241 S.W. 820, 822 (1922).

We agree with a leading treatise on Kentucky law that "[i]t is incumbent upon the attorney who does title work to become familiar with the methods of indexing and record-keeping in the county clerk's office of the county in which the attorney practices." 3 KY. PRAC. *Real Estate Transactions* § 2:21

(2020).[4] *See* 3 KY. PRAC. *Real Estate Transactions* § 2:43 (2020) (explaining "[t]he recording statutes as regards liens on real property mean that the rule of caveat emptor has been eliminated from such dealings and places on the title examiner the duty of examining the cross-index files to determine if any mortgages have been recorded against the property or lodged for record."); *State Street Bank & Tr. Co. of Boston v. Heck's, Inc.*, 963 S.W.2d 626, 630 (Ky. 1998) (explaining that "constructive notice is established by mere proof that a valid interest in real property is properly recorded in the office of a county court clerk" while actual knowledge or "knowledge of such facts as would lead a reasonably prudent person under like circumstances to inquire into the matter and discover the existence of that mortgage" provides priority even when a mortgage is either unrecorded or improperly recorded).

---

[4] Unsurprisingly, the lack of a mandate by the General Assembly as to exactly in which books mortgages, and other recordable documents, must be lodged has led to idiosyncratic, county-specific filing systems across the Commonwealth. For example, Cumberland's attorney submitted an affidavit in the trial court, the contents of which have not been controverted, averring that "[i]n Pulaski County, the County Court Clerk records mortgage releases in its Power of Attorney Books. In Laurel County, Kentucky, the County Court Clerk records Land Contracts in its Lease Books. In Whitley County, Kentucky, the County Court Clerk records Land Contracts in its Miscellaneous Books." Even the main case relied upon by First Southern, *Leckie*, involved a lease having been recorded in a Deed Book, which the Sixth Circuit deemed to have been a "proper recordation[.]" *Leckie*, 405 F.2d at 1046.

We recite those quirky filing systems to highlight how vital it is for a title examiner to *thoroughly* research documents appearing in a cross-index. However, although there is not a statute requiring a statewide uniform filing system, we would encourage county clerks to collectively adopt more uniform and commonsense filing systems going forward which would be more user-friendly and offer the best opportunity for actual notice.

First Southern also seeks equity-based relief because its title opinions did not locate Cumberland's mortgage. We do not know why First Southern's title opinions omitted Cumberland's mortgage, though the strong implication is that the examiners failed to look at that mortgage since it was filed in an apartment mortgage book. However, the fact that the title examiners failed to find Cumberland's mortgage does not answer the question of whether First Southern's title examiners *reasonably should* have seen Cumberland's mortgage. The title examiners' error is not an appropriate basis for relief against Cumberland.

We are satisfied that First Southern had constructive or inquiry notice of Cumberland's previously-recorded mortgage. Therefore, the impact of the failure to note Cumberland's mortgage must be felt by First Southern because it "was in better position by reasonable diligence or care to have averted the loss which now must be borne by the one or the other." *Louisville Asphalt Co. v. Cobb*, 310 Ky. 126, 129, 220 S.W.2d 110, 112 (1949).

We have considered all issues raised in the briefs, but deem all arguments not discussed herein to be irrelevant, redundant, or without merit.

For the foregoing reasons, the Pulaski Circuit Court is affirmed because it properly determined that based on the prior filing and recordation of Cumberland's mortgage on the Grandview property, Cumberland had priority over First Southern's later filed mortgage on that property.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

Stephanie L. McGehee-Shacklette
Ashley D. Gerughty
Bowling Green, Kentucky


John S. Gillum
Somerset, Kentucky


Molly K. Hardy
Somerset, Kentucky

BRIEF FOR APPELLEE
CUMBERLAND SECURITY BANK,
INC.:

Sarah Tipton Reeves
Jeffrey R. Tipton
Corbin, Kentucky